Filed 10/9/13  P. v. Harrington CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>CHARLIE HARRINGTON,<br><br>          Defendant and Appellant. | A134007<br><br>(Alameda County<br>Super. Ct. No. C165167) |

Defendant Charlie Harrington was arrested after he was pulled over driving a stolen car, and a jury later convicted him of carjacking.  He argues on appeal that his conviction must be reversed because (1) the trial court improperly consolidated the carjacking charges with other charges alleging a sexual assault, (2) his trial counsel was ineffective in failing to object to the admission of a rap video, and (3) the prosecutor committed misconduct during closing arguments.  We affirm.

I.

FACTUAL AND PROCEDURAL
BACKGROUND

Around 10 p.m. on August 16, 2010, Tisha R. parked her car near a housing project on Seventh Street in Oakland, where she planned to visit a friend.  She got out of the car, reached back inside to retrieve a bag, and was confronted by Harrington and three other men wearing black-hooded sweatshirts and carrying guns.  They forced her to give them her keys, jewelry, and phone, and then they jumped in her car and drove away.

1

Two days later, Harrington was pulled over driving the stolen car, and the police arrested him.

Harrington's exact role in the carjacking was never conclusively resolved. Before trial, Tisha R. identified Harrington in a photographic lineup as someone who had robbed her, pointed a gun at her, and said, " 'Break yourself, bitch.' " But when asked at trial to identify the person who held a gun to her and said those words, she said that Harrington resembled that person "[a] little bit," and that her memory about the incident was better soon after it occurred. She also acknowledged that she may have at some point confused which of the four men got into the driver's side and which of them got into the passenger side after they took her car. Still, it was not disputed that Harrington had played a role in the carjacking. He had acknowledged during a police interview that he was at the scene of the carjacking, watched it happen, and acted as a lookout.

On August 20, 2010, Harrington was charged by complaint in connection with the carjacking. Less than two weeks later, he was charged by complaint in a separate case for a sexual assault that allegedly occurred on August 9, a week before the carjacking, at the same housing project. After informations were filed in both cases, the prosecution filed a motion to consolidate them.

During two days of pretrial hearings, the parties discussed the proposed consolidation and certain evidentiary issues. One of the evidentiary issues involved an excerpt from a rap-music video that featured Harrington and had been posted online. The request to admit the video was intertwined with the motion to consolidate because it involved the video's admissibility in one or both of the cases.

The trial court ruled that if the sexual-assault case was tried separately, the rap video would be admissible to show intent under Evidence Code section 1101, subdivision (b). Defense counsel did not oppose this ruling because he believed that the witnesses who would testify about the alleged sexual assault were familiar with the video and that the video would become relevant in some way. He did, however, object to the admission of the video in the carjacking case. The court noted the objection, but deferred ruling on the admissibility issue and the proposed consolidation until the following day.

2

The next day, the court first focused on whether the rap video was admissible to show Harrington's intent in the carjacking case. Defense counsel argued that Harrington would suffer prejudice if *any* evidence from the sexual-assault case was considered in the carjacking case. The trial court apparently disagreed, because it granted the motion to consolidate. The court did not specifically rule on the admissibility of the rap video in the carjacking case.

Harrington was thereafter charged by consolidated information with crimes arising out of both events. In connection with the carjacking, he was charged with (1) carjacking with an allegation he personally used a firearm (Pen. Code, §§ 215, subd. (a), 12022.5, subd. (a), 12022.53, subds. (b), (g))[1] and (2) possession of a firearm by a felon (former § 12021, subd. (a)(1)), and in connection with the sexual assault case, he was charged with sexual penetration with a foreign object (§ 289, subd. (a)(1)), second-degree robbery (§ 211), possession of a firearm by a felon (former § 12021, subd. (a)(1)), and criminal threats (§ 422).

At the consolidated trial, the prosecution presented evidence about the alleged sexual assault, including testimony from the alleged victim, who was a resident of the apartment complex where the carjacking later occurred. According to her, she tried to buy cocaine from Harrington in the lobby of the housing complex in the early morning hours of August 9, 2010. She testified that Harrington directed her to follow him into a second floor stairwell, held a gun to her face, and told her, " 'Bitch, give me everything you got.' " She stated that he took her money, keys, cellular phone, and iPod, and then touched her vagina after ordering her to take her clothes off. According to the alleged victim, a companion and her brother then intervened. The alleged victim's brother also testified, and he claimed that Harrington pointed a gun at him and threatened to shoot him.

The rap video was admitted into evidence for limited purposes. The jury was told that it could consider the video for the purposes of deciding whether Harrington acted

---

[1] All statutory references are to the Penal Code unless otherwise specified.

3

with the requisite intent in connection with the sexual-assault incident, whether he acted with the intent to deprive the victim of her car in connection with the carjacking, whether he knew that he possessed a firearm as required for the firearm-possession counts, and whether he had a motive to commit the offenses alleged in the carjacking case.

During closing arguments, another incident occurred that is relevant to this appeal. During his argument, the prosecutor stated that some of the defense counsel's theories were based on speculation and were presented to create confusion. Defense counsel objected to this comment, but the objection was overruled.

Before it deliberated, the jury was given instructions on issues involved in this appeal. First, it was directed to keep the evidence of the carjacking separate from the evidence of the sexual assault. Specifically, it was instructed that "the evidence of the events of August 9th may not be considered as evidence that the defendant was a perpetrator of the events of August 16th and vice versa. Evidence of the one date may be considered as to the other date only as to the limited issues set forth above; i.e.[,] those involving intent or mental state." Second, it was instructed that Harrington could be found guilty of carjacking if he aided or abetted it, regardless whether he personally committed the crime. Third, in addition to being instructed on the limited purposes for which it could consider the rap video, the jury was instructed that it was not to conclude from the video that Harrington had a bad character or was disposed to commit crime.

The jury convicted Harrington of carjacking but nothing else. It found untrue the allegation that he personally used a firearm in the commission of the carjacking, and it found him not guilty of possession of a firearm by a felon. None of the four counts related to the sexual assault was sustained: Harrington was found not guilty of sexual assault, and jurors were unable to reach a verdict on the remaining charges, which were dismissed after the trial court declared a mistrial.

For purposes of sentencing, the trial court found true an allegation that Harrington had a prior prison term (§ 667.5, subd. (b)), but struck it and sentenced Harrington to the upper term of nine years (§ 215, subd. (b)). This timely appeal followed.

4

## II.

### DISCUSSION

*A. The Trial Court Did Not Abuse its Discretion in Consolidating the Cases.*

Harrington first contends that the trial court denied him a fair trial by consolidating the two actions. We disagree.

Section 954 permits the consolidation of criminal matters. It provides that "[a]n accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated." A trial court faces two questions in considering whether to consolidate charges: whether they are eligible for joinder; and whether, despite their eligibility, the charges should be tried separately in order to ensure a fair trial. (*People v. Earle* (2009) 172 Cal.App.4th 372, 386.) Harrington does not challenge the trial court's conclusion on the first issue—that the joined offenses were "of the same class of offenses" and thus eligible to be joined. (*People v. Alvarez* (1996) 14 Cal.4th 155, 188 [rape and robbery both "assaultive crime[s] against the person"]; *People v. Poggi* (1988) 45 Cal.3d 306, 320 [same].) He argues instead that the trial court denied him a fair trial in ordering the two cases consolidated, a question we review for abuse of the trial court's discretion. (*People v. Scott* (2011) 52 Cal.4th 452, 469.)

In determining whether a trial court abused its discretion under section 954, we consider the record before the trial court at the time it made its ruling. (*People v. Scott*, *supra*, 52 Cal.4th at p. 469; *People v. Soper* (2009) 45 Cal.4th 759, 774.) We first consider whether the evidence supporting the separate charges would be cross-admissible in separate trials. (*Soper* at p. 774.) Harrington points to the differences between the charges in the carjacking and sexual-assault cases and argues that evidence of these crimes would not have been cross-admissible in separate trials. He argues that "uncharged sexual misconduct is inherently prejudicial." But in making this argument he relies on decades-old cases, decided before Evidence Code section 1108 was adopted,

5

that address the admission of other-crimes evidence where consolidation was *not* an issue. (*People v. Alcala* (1984) 36 Cal.3d 604, 631-632; *People v. Thomas* (1978) 20 Cal.3d 457, 466.) These cases have little bearing here because the analysis and standards governing the admissibility of evidence of other crimes differ when the evidence is being offered in the context of a consolidated action.

As our Supreme Court has repeatedly observed, "the applicable analysis is significantly different in the context of properly joined charged offenses. [Citations.] Unlike what occurs in situations involving the admissibility of uncharged misconduct—in which the People bear the burden of establishing that the evidence has substantial probative value that clearly outweighs its inherent prejudicial effect—by contrast, in the context of properly joined offenses, '[t]he burden is reversed.' [Citation.] In the *latter* setting, '[t]he *prosecution* is *entitled* to join offenses under the circumstances specified in section 954. The burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried. [Citations.] When the offenses are [properly] joined for trial the defendant's guilt of all the offenses is at issue and the problem of confusing the jury with collateral matters does not arise. The other-crimes evidence does not relate to [an] offense for which the defendant may have escaped punishment. That the evidence would otherwise be inadmissible [under Evidence Code section 352] may be considered as a factor suggesting possible prejudice, but countervailing considerations [of efficiency and judicial economy] that are not present when evidence of uncharged offenses is offered must be weighed in ruling on a . . . motion [to sever properly joined charges]. *The burden is on the defendant therefore to persuade the court that these countervailing considerations are outweighed by a substantial danger of undue prejudice.*' [Citations.]" (*People v. Soper*, *supra*, 45 Cal.4th at pp. 773-774, original italics.) Not only is the burden allocated differently below, but a defendant must also make a *stronger* showing of prejudice on appeal in order to establish reversible error. (*Id.* at p. 774.)

Although it is far from clear that the evidence in the sexual-assault case was admissible to prove motive or intent in the carjacking case, we ultimately conclude that

6

Harrington fell short of satisfying his burden of showing that a substantial danger of undue prejudice outweighed the considerations of judicial economy and efficiency. Citing *People v. Scott*, *supra*, 52 Cal.4th at page 470, respondent correctly summarizes the general rule that where evidence is offered under Evidence Code section 1101, subdivision (b) to prove intent, " '[t]he least degree of similarity is required.' "  But in *Scott*, the court summarized the extensive similarities between the various crimes, including the fact that the defendant murdered two victims with their own kitchen knives. (*Scott* at pp. 471-472.)  Here, one crime was a carjacking perpetrated against a stranger, and the other was an alleged robbery and sexual assault perpetrated against a known victim.  Other than the facts that the two crimes happened at the same housing project and that Harrington was alleged to have used a gun in both instances (an allegation that was ultimately rejected by the jury), we seriously question how the evidence in either of them demonstrates an intent by Harrington to engage in the other.

We need not conclusively resolve the issue whether the evidence here was cross-admissible, however, because even when evidence is not cross-admissible trial courts retain discretion to consolidate cases.  (§ 954.1 [cross-admissibility of evidence not a prerequisite to consolidation under § 954]; *People v. Soper*, *supra*, 45 Cal.4th at p. 775.) "If we determine that evidence underlying properly joined charges would *not* be cross-admissible, we proceed to consider 'whether the benefits of joinder were sufficiently substantial to outweigh the possible "spill-over" effect of the "other-crimes" evidence on the jury in its consideration of the evidence of defendant's guilt of each set of offenses.' [Citations.]" (*Soper* at p. 775, original italics.)  In making *this* assessment, we consider "(1) whether some of the charges are particularly likely to inflame the jury against the defendant; (2) whether a weak case has been joined with a strong case or another weak case so that the totality of the evidence may alter the outcome as to some or all of the charges; or (3) whether one of the charges (but not another) is a capital offense, or the joinder of the charges converts the matter into a capital case.  [Citations.]  We then balance the potential for prejudice to the defendant from a joint trial against the countervailing benefits to the state." (*Ibid.*, fn. omitted.)

7

Our application of these factors here convinces us that the benefit of consolidation was not outweighed by the possible spillover effect of the evidence. First, Harrington's alleged sexual misconduct was not particularly likely to inflame the jury—especially since the allegations were made by someone who admitted that she had once been a prostitute and was trying to buy drugs at the time of the incident. (*People v. Soper*, *supra*, 45 Cal.4th at p. 775.) Second, the carjacking case was not so weak, and the sexual-assault case was not so strong, that the outcome in the carjacking case was likely to be affected by any cross-evidence. (*Ibid.*) In fact, the carjacking case was compelling from the outset because Harrington had admitted to the police that he was present at the carjacking, and he had been found driving the victim's stolen car. And defense counsel depicted a weak defense when he stated before trial that the defense would focus on what Harrington meant when he told a police officer he acted as a "lookout." Third, Harrington was charged with no capital offenses. (*Ibid.*) These factors lead us to conclude that the trial court acted well within its discretion in consolidating the charges.

It is particularly clear that Harrington was not prejudiced when we analyze the results at trial. "A pretrial ruling that was correct when made can be reversed on appeal only if joinder was so grossly unfair as to deny due process." (*People v. Stitely* (2005) 35 Cal.4th 514, 531; see also *People v. Hartsch* (2010) 49 Cal.4th 472, 494 [defendant unable to demonstrate "actual prejudice amounting to a denial of fundamental unfairness"].) "[W]hen the issue is raised on appeal we must . . . consider the actual impact at trial of the joinder. [Citations.] Here we look to the evidence actually introduced at trial to determine whether 'a gross unfairness has occurred such as to deprive the defendant of a fair trial or due process of law.' [Citation.]" (*People v. Bean* (1988) 46 Cal.3d 919, 940; see also *People v. Musselwhite* (1998) 17 Cal.4th 1216, 1244-1245 [separate trials constitutionally required if joinder so prejudicial that it would deny defendant fair trial].)

The evidence in the sexual-assault case led the jury to find Harrington not guilty of one count and unable to reach a verdict on the others. And the evidence that Harrington used a gun in the sexual-assault case did not lead the jury to conclude that he used a gun

in the carjacking case, as it found the allegation that he used a weapon in the course of taking the victim's car to be untrue, and he was found not guilty of being a felon in possession of a firearm. Given this result, Harrington's contention that jurors might have wanted to punish him in the carjacking case because he escaped conviction in the sexual-assault case is thus purely speculative. Our review of the record leads us to conclude that jurors followed the jury instruction that evidence of the charges in the carjacking case was not to be considered as evidence that Harrington committed the crimes charged in the sexual-assault case. Likewise, we have no reason to doubt that jurors did not use evidence underlying the sexual-assault counts to conclude that Harrington committed the carjacking, given the strength of the evidence supporting his conviction. Harrington received a fair trial.

### B. Any Error in Admitting the Rap Video into Evidence Was Harmless.

Harrington next argues that his conviction must be reversed because his counsel was ineffective in failing to object to the admission of the rap-music video. He contends that his counsel should have objected to the admission of the video because it was inadmissible under Evidence Code section 1101 to demonstrate intent and motive and that it also was unduly prejudicial under Evidence Code section 352. We reject this argument because the record shows that Harrington's trial counsel *did* object to the admission of the video in the carjacking case, and Harrington cannot establish prejudice from its admission in any event.

The transcript of the video provides as follows:

"All gas no brakes. Nigga', I play with a cape.

"(Unintelligible), I shoot a nigga' in his face.

"I'm on the block all day. Nigga', I rob all day. Paper chase all day and get high all day.

"Nigga' I'm (unintelligible), so I keep a thirty (unintelligible).

"If I catch a nigga' slip, I'm gonna' feed him the whole clip.

"You can catch me in a riddle, four-door Regal. Sippin' on robo. Scratched up with a Nintendo.

9

"Put a nigga' on flat for any one of my ten folks.

"JB. Taco. Evening Ken Dolo. Yolo. Mac Daddy. Young Money. Die. Rainbow. Kenmo. J Baby. Tyron. J Dub. Big Bub. Bam. Boom. Money Bo. Steel Wheel. Lulu. Scoop. J Dolla. J Digga. Booyah."

Although Harrington refers in the video excerpt to "shoot[ing]" someone in the face and keeping "a thirty" (presumably, a reference to a gun), a viewing of the video reveals that Harrington is never seen actually holding a gun.[2] An unidentified man is seen holding a gun over a person lying on the ground with what appears to be blood, an apparent dramatization and not a depiction of a real shooting.

The admission of the video was discussed below mostly as it related to whether the carjacking and sexual-assault cases should be consolidated. Among other contentions, the prosecutor argued that the video was relevant to establish Harrington's motive to rob in the sexual-assault case (Evid. Code, § 1101, subd. (b)) because Harrington was reportedly mad because the alleged victim had called the police earlier in the day in connection with an unrelated fight. He theorized that this may have been what Harrington meant in the video when he said, " 'If I catch a nigga slip, I'm gonna feed him the whole clip.' " In our view, this theory was speculative and attenuated.

In any event, defense counsel stated that he did not object to the admission of the video in the *sexual-assault* case, because he was "rather confident that those witnesses had already seen this video, knew about it, knew his music. And so it would be nothing new or different for the witnesses and complainants in the case . . . ." As to whether it was admissible in connection with the *carjacking* case, counsel stated he would object to its admission under Evidence Code section 1101, subdivision (b), and that he would ask to have it excluded if the carjacking case was being tried separately. The trial court noted that "[a]s to the [carjacking] case, there is [an objection]," but admitted it for limited purposes in both cases.

---

**2** The DVD exhibit containing the excerpt was not included in the record on appeal but was subsequently transferred to this court upon our request. (Cal. Rules of Court, rule 8.224(d).)

10

Evidence of a defendant's prior conduct is generally inadmissible to prove his or her conduct on a specified occasion. (Evid. Code, § 1101, subd. (a).) Such evidence is admissible, however, if it is relevant to prove some fact other than a defendant's disposition to commit such an act, such as intent or motive. (Evid. Code, § 1101, subd. (b); *People v. Carter* (2005) 36 Cal.4th 1114, 1147; see, e.g., *People v. Zepeda* (2008) 167 Cal.App.4th 25, 34-35 [no error to admit compact disc of gangster rap lyrics to show defendant's state of mind and motives to support his criminal gang's activities].) We are sympathetic to Harrington's argument that there was "no logical connection between the rap video and the charged crimes." Respondent does not even argue that the rap video was admissible in the carjacking case and instead focuses on the lack of prejudice in its admission.

This focus is understandable because, even if we assume that Harrington is correct that the trial court abused its discretion in admitting the rap video, we may reverse a judgment based upon the erroneous admission of evidence only if the error "resulted in a miscarriage of justice." (Evid. Code, § 353, subd. (b); see also Cal. Const., art. VI, § 13 [no reversal of judgment based on improper admission of evidence unless examination of entire cause, including the evidence, reveals error resulted in miscarriage of justice].) No such miscarriage of justice occurred here. Both the prosecutor and defense counsel mentioned the video only in passing during their opening statements. The excerpt of the video shown to the jury ran less than a minute, and the prosecutor referred to it only briefly during his closing argument. The jury was instructed it was to be used for limited purposes, mostly to show intent to commit crimes for which Harrington was not convicted. The only purpose for which it was to be used in connection with the one count of which he *was* convicted (carjacking) was to show that that he acted with the intent to permanently deprive the victim of her car and acted with a motive. The record shows that there was abundant evidence of his intent to deprive the carjacking victim of her car other than the video, including the fact that Harrington was driving the stolen car two days after it was taken. To the extent it was arguably prejudicial to hear Harrington rap about having a gun, this evidence did not lead the jury to convict him on any weapons

11

charges.  We thus cannot conclude that a different verdict was reasonably probable absent the alleged error in admitting the evidence of the rap video.  (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Holloway* (2004) 33 Cal.4th 96, 128-129.)

In light of this conclusion, we must also reject Harrington's argument that his trial attorney provided ineffective assistance of counsel in failing to object to the jury's consideration of the rap video, thereby depriving him of his federal and state constitutional due process rights to a fair trial.  First, his attorney *did* object to the admission of the video *for purposes of the carjacking case*, an objection that was specifically noted by the trial court.  Second, our conclusion that the admission of the video was not prejudicial precludes a finding that Harrington received ineffective assistance.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [in order to establish ineffective assistance of counsel, defendant must show *both* that counsel's performance was deficient *and* that performance prejudiced him]; *In re Elizabeth G.* (2001) 88 Cal.App.4th 496, 503 [to establish prejudice, defendant must demonstrate reasonable probability that result would have been more favorable absent counsel's deficient performance].)

*C.  The Prosecutor Did Not Commit Misconduct During Closing Argument.*

Harrington next contends that his conviction should be reversed because the prosecutor committed misconduct by disparaging defense counsel during closing argument.  A full review of the parties' arguments does not support the contention.

During his opening statement to the jury, defense counsel described facts that would purportedly be proven by the evidence but that were never actually proven or even mentioned.  He stated that Harrington approached the carjacking victim's car because he thought it belonged to his mother and that Harrington saw that the carjacking victim was in a dispute with a homeless man.  He stated that three men decided to teach the carjacking victim a lesson by stealing her car and that Harrington participated against his wishes because he was afraid.  Counsel stated that Harrington rode as a passenger in the vehicle for a few blocks, saw the three other men take property from the car after the driver parked, but then walked back to the scene of the carjacking and told the victim

12

where her car was located.  He stated that the victim responded by saying " 'I don't care. I got cars.  I don't need that car.' "  Counsel also stated that the woman who claimed to have been sexually assaulted had in fact offered to exchange oral sex for drugs from Harrington and that he left when the woman's brother walked in on them.

The prosecutor, during his closing argument, emphasized that opening statements are not evidence and that no evidence was presented to support many of the claims presented in defense counsel's opening statement—such as the notion that the sexual-assault incident was "some sort of drugs for sex gone wrong."  When it was defense counsel's turn to make his closing argument, he presented new theories about the carjacking.  He speculated that the carjacking victim might have identified Harrington because she was confused from having previously seen him around the housing complex; overestimated the length of the attack; identified Harrington to a police officer in a photographic lineup partly because the officer unintentionally signaled which picture to choose; and failed to notice and describe to police Harrington's gold dental work because Harrington did not play a significant role in the carjacking.

In his rebuttal argument, the prosecutor pointed out some of the differences between defense counsel's various theories of the case and the evidence that was actually presented: "As to [the carjacking victim], in opening statement, the defense said that the defendant thought he saw his mom's car; there was some homeless guy that got mistreated, and that's why they were carjacking [the victim].  And then there was some attempt to return the car, but [the victim] has tons of cars, so she didn't want her car back.

"Fast-forward to today:  The argument was that well, yeah, she was carjacked, but she picked a guy who she knows maybe from around the complex.  Maybe she's seen him before.  Maybe this, maybe that.  [The officer who showed her a photographic lineup] told her to pick, kind of gave her the old wink and the nod 'This is who you should pick'; that the events were under one minute.  There's no evidence of that.

"This is a perfect example of why your duty as a juror is to evaluate the evidence. [The victim] said it was five minutes.  The defendant said five or ten minutes, but counsel

13

says it must be one minute. There's no evidence of that. There is no evidence of what he's saying.

"And you know today 'It must have been the teeth. She would have seen the teeth had she been able to identify'—*all of this is to try to create confusion based on speculation on the evidence. That's all it is. Throw the spaghetti up against the wall and see if it sticks*." (Italics added.) Defense counsel lodged an objection, which the trial court overruled.

Harrington claims that the italicized portion of the prosecutor's argument amounted to misconduct because it was an attack on defense counsel's integrity and cast aspersions on him. We disagree.

As a preliminary matter, we agree with Harrington that his objection below preserved the issue for appellate review. " 'As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citations.]' [Citation.]" (*People v. Hill* (1998) 17 Cal.4th 800, 820.) Here, although defense counsel did not specify when he objected that he was doing so on grounds of "prosecutorial misconduct," this is likely because the trial court specifically instructed him before trial not to use the term when lodging objections. And the fact that counsel did not request an admonition did not forfeit the issue for appeal because the trial court immediately overruled the objection, and, as a consequence, counsel had no opportunity to make such a request. (*Ibid.*)

But although the issue was adequately preserved for appeal, we cannot conclude on the merits that the prosecutor committed misconduct. " 'The applicable federal and state standards regarding prosecutorial misconduct are well established. " 'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' " [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt

14

to persuade either the court or the jury." ' " [Citation.]' [Citation.]" (*People v. Hill*, *supra*, 17 Cal.4th at p. 819.)

Harrington compares the brief excerpt from the prosecutor's rebuttal argument to the intemperate remarks made in *People v. Hill*, *supra*, 17 Cal.4th at page 832. *Hill* was a "rancorous trial" that involved several "unfortunate episode[s]" of the prosecutor disparaging defense counsel. (*Id.* at p. 833.) This was not the situation here. The prosecutor's passing comment in this case was more akin to comments found to be unobjectionable in *People v. Medina* (1995) 11 Cal.4th 694, 758-759, where the prosecutor argued that " 'any experienced defense attorney can twist a little, poke a little, try to draw some speculation, try to get you to buy something . . . .' "

We conclude that there was no prosecutorial misconduct.

*D. There Was No Cumulative Error.*

Finally, having found no prejudicial error, we reject Harrington's argument that the cumulative effect of the alleged errors he identifies require reversal of the judgment. (*People v. Wallace* (2008) 44 Cal.4th 1032, 1099.)

III.
DISPOSITION

The judgment is affirmed.

_____
Humes, J.

We concur:

_____
Reardon, Acting P.J.

_____
Rivera, J.

15