[No. C054972. Third Dist. Sept. 25, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
SANTOS NIETO ZEPEDA, Defendant and Appellant.

26

**COUNSEL**

Mark D. Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Marcia A. Fay, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NICHOLSON, J.**—Defendant Santos Nieto Zepeda shot a rival gang member in the back, paralyzing him, and then shot and killed the rival's son. On appeal, he claims the trial court erred by (1) instructing the jury with CALCRIM No. 220, an instruction he claims misstates the proof beyond a reasonable doubt standard by not referring to the conviction of proof being deeply "felt"; and (2) admitting unduly prejudicial evidence in the form of two tracks from a gangster rap CD (compact disc) he wrote.

We disagree with both of defendant's claims and affirm the judgment. We publish our decision primarily to deter the defense bar from continuing to use defendant's line of attack against CALCRIM No. 220, and we urge defense counsel to direct their resources to arguably meritorious grounds of appeal.

### FACTS

Defendant was charged with murder (Pen. Code, § 187, subd. (a)),[1] attempted murder (§§ 664, 187, subd. (a)), two assaults with a semiautomatic firearm (§ 254, subd. (b)), and, among other enhancements, that he committed the assaults for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

In short, the victims and some friends had been partying in the foothills east of Chico. As they drove back to the main road, they passed a group of people who also were partying. Someone in the latter group called out to the victims' car. When the two victims got out of their car and asked, "What's up," one of the group members said "Sergio, VCN Norte," meaning he was a member of a local Norteño gang, Varrio Chico Norte. The older victim replied, "Big time Sur," meaning Sureño. A fight broke out. The older victim attempted to run away, but defendant shot him two times. The younger victim was lying on the ground, being hit and kicked by others. Defendant walked up to him and shot him twice.

The jury convicted defendant on all charged counts and enhancements, and the trial court sentenced him to a state prison term totaling 84 years to life.

### DISCUSSION

### I

### *CALCRIM No. 220*

Proof beyond a reasonable doubt requires "a subjective state of near certitude of the guilt of the accused." (*Jackson v. Virginia* (1979) 443 U.S. 307,

---

[1] Further undesignated references to sections are to the Penal Code.

315 [61 L.Ed.2d 560, 571, 99 S.Ct. 2781].) Defendant complains CALCRIM No. 220 does not convey this subjective element of conviction beyond a reasonable doubt, contrary to the state statute defining reasonable doubt, section 1096.[2] Defendant argues CALCRIM No. 220 "improperly convey[s] the impression" that the standard of proof of reasonable doubt is "merely a very high degree of objective probability, and that 'abiding conviction' is more a temporal matter than a matter of intensity of feeling."[3]

■ Defendant asserts the language in the instruction fails to convey to the jury that "the issue is not only a cognitive assessment of the evidence, but something that is also *felt subjectively* . . . ." (Italics added.) He contrasts the differences between section 1096 and CALCRIM No. 220 to advance his point. Section 1096 defines reasonable doubt as "that state of the case, which, after the entire comparison and consideration of all the evidence, *leaves the minds of jurors* in that condition that *they cannot say they feel* an abiding conviction of the truth of the charge." (Italics added.) CALCRIM No. 220 omits the reference to "feeling": "Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true." He asserts the new language fails to inform the jury that the proof "must induce in the individual jurors a *feeling* of confidence that he or she, in condemning the defendant, is taking an action, the consequences of which he or she understands and *feels* the import." (Original italics.)

---

[2] Section 1096 provides: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his or her guilt is satisfactorily shown, he or she is entitled to an acquittal, but the effect of this presumption is only to place upon the state the burden of proving him or her guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.' "

[3] CALCRIM No. 220 was given to the jury as follows: "The fact that a criminal charge had been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial.

"A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt.

"Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt.

"Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt, because everything in life is open to some possible or imaginary doubt.

"In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."

He argues the phrase "abiding conviction" does not save the instruction's alleged failure to state the "subjective element" of reasonable doubt because the phrase depends upon the context in which it appears for its meaning. By omitting the reference to the minds of the jurors and how they "feel," CALCRIM No. 220 allegedly strips the "abiding conviction" phrase of its power to convey to the jurors that guilt must be felt subjectively, as well as reached objectively. As earlier cases attempted to explain, defendant argues, the conviction must be felt " 'such as you would be willing to act upon in the more weighty and important matters relating to your own affairs' " (*Hopt v. Utah* (1887) 120 U.S. 430, 439 [30 L.Ed. 708, 711, 7 S.Ct. 614]), or such that it " 'directs and satisfies the conscience of those who are bound to act conscientiously upon it.' " (*People v. Eggers* (1947) 30 Cal.2d 676, 688 [185 P.2d 1].) Defendant claims the phrase "abiding conviction," standing alone as it does in CALCRIM No. 220, fails to convey this level of subjective commitment. He thus concludes the instruction misstates the proof beyond a reasonable doubt standard.

Defendant's argument borders on the frivolous. First, the trial court is not required to instruct the jury in the language of section 1096 or even reference a subjective state of certitude. (§ 1096a; *People v. Freeman* (1994) 8 Cal.4th 450, 503 [34 Cal.Rptr.2d 558, 882 P.2d 249].) "The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. [Citation.] Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, [citation] the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. [Citation.] Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.' [Citation.]" (*Victor v. Nebraska* (1994) 511 U.S. 1, 5 [127 L.Ed.2d 583, 590, 114 S.Ct. 1239].) Thus, nothing requires a trial court instructing on reasonable doubt to define any amount of subjective certitude required to make a finding of guilt.

Second, defendant's argument is mere semantics. The phrase "abiding conviction," even without being described as "felt," adequately conveys the subjective state of certitude required by the standard of proof. The modifier "abiding" informs the juror his conviction of guilt must be more than a strong and convincing belief. Use of the term "abiding" tells the juror his conviction must be of a "lasting, permanent nature," and it informs him "as to how

strongly and how *deeply* his conviction must be *held.*" (*People v. Brigham* (1979) 25 Cal.3d 283, 290–291 [157 Cal.Rptr. 905, 599 P.2d 100], italics added.)[4]

The term "abiding conviction" in the reasonable doubt instruction "convey[s] the requirement that the jurors' belief in the truth of the charge must be both long lasting and *deeply felt.*" (*People v. Light* (1996) 44 Cal.App.4th 879, 885 [52 Cal.Rptr.2d 218], italics added [CALJIC No. 2.90].) This is so whether the conviction is "held," "felt," or "had." We cannot imagine a personal abiding conviction that is not deeply felt in the sense defendant uses those words. Thus, contrary to defendant's contention, the phrase "abiding conviction" needs no additional context or description to convey the type of personal conviction required to pronounce guilt.

Moreover, CALCRIM instructions go one step further in informing the jurors of the subjective nature of their convictions. CALCRIM No. 220's phrase, "proof that leaves *you* with an abiding conviction that the charge is true," unmistakably conveys the conviction's subjective nature and the very high level of certainty required. In addition, CALCRIM No. 3550, also given to the jury by the trial court, told the jurors each "must decide the case for yourself" and that they should not change their minds "just because other jurors" disagree with them. There is little likelihood the jury misunderstood these instructions to mean something other than the type of personal conviction defendant seeks to ensure.

In reviewing a challenge to the instructions given to the jury, we consider the entire charge, not parts of an instruction or a particular instruction. (*People v. Castillo* (1997) 16 Cal.4th 1009, 1016 [68 Cal.Rptr.2d 648, 945 P.2d 1197].) Defendant must show a reasonable likelihood that the jury misunderstood the challenged instructions. (*People v. Cain* (1995) 10 Cal.4th 1, 36–37 [40 Cal.Rptr.2d 481, 892 P.2d 1224].)

■ Defendant fails to make that showing here. CALCRIM No. 220 conveys to the jury the concept of reasonable doubt without being ambiguous or obscuring the concept's scope. It defines proof beyond a reasonable doubt

[4] Our state Supreme Court and the Courts of Appeal in every appellate district consistently rejected defendant's argument as it applied to the "abiding conviction" phrase in CALJIC No. 2.90. (*People v. Cook* (2006) 39 Cal.4th 566, 601 [47 Cal.Rptr.3d 22, 139 P.3d 492]; *People v. Freeman, supra,* 8 Cal.4th at pp. 501–505; *People v. Hearon* (1999) 72 Cal.App.4th 1285, 1286–1287 [85 Cal.Rptr.2d 424].) Those rulings apply with equal force to the language of CALCRIM No. 220. (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1239 [67 Cal.Rptr.3d 904].) "The definition of reasonable doubt in CALCRIM No. 220 is derived from CALJIC No. 2.90 which in turn was taken directly from the language of section 1096 which, when given, requires 'no further instruction . . . defining reasonable doubt . . . .' (§ 1096a.)" (*People v. Campos, supra,* at p. 1239.)

as proof that leaves the juror with an abiding conviction, a description that legally and linguistically means a deeply felt conviction. By referencing an "abiding conviction," the instruction "correctly states the government's burden of proof." (*Victor v. Nebraska, supra*, 511 U.S. at pp. 14–15.) The Constitution requires nothing more. The trial court committed no error by instructing the jury with CALCRIM No. 220.

## II

### *Playing a CD of Gangster Rap Lyrics to the Jury*

Defendant claims the trial court abused its discretion when, over his objection under Evidence Code section 352, it allowed the prosecutor to play for the jury two tracks from a "gangster rap" CD that defendant had written. He asserts the evidence was cumulative and unduly prejudicial in light of the large amount of gang evidence the court admitted. We disagree.

### A. *Additional background information*

At trial, law enforcement gang experts testified regarding evidence of defendant's active membership in the Norteño street gang. They found numerous items in a makeshift sound studio defendant had in a home he had been living in after the shooting. These included writings with "14," and the letter "N," both of which represent the Norteño gang. Officers also found handwritten notes in defendant's writing that included the phrases, "I'm a G and I won't stop," "I'm still saying fuck them scraps,"[5] and "Hate is all I'm feelin' and a killin' I'm still willin'." A photograph depicted defendant making Norteño gang signs with another man.

When defendant was arrested, he bore gang references tattooed on his hand. Notebooks found in his bedroom included numerous references and drawings symbolic of the Norteño gang and its hatred of Sureño gang members.

One item recovered was a CD entitled "Smebbin Through the Town." The CD's packaging contained symbols and coloring consistent with the Norteño gang. Defendant's picture was on the inside cover. It showed him using his hands to signify the number 14. Using defendant's moniker, Young Saint, the CD package credited defendant with six of the songs. The genre of the music was "gangster rap."

Over defendant's objection under Evidence Code section 352, the trial court allowed the prosecution to play for the jury two of the tracks credited to

---

[5] Norteños refer to Sureños as "scraps."

defendant and to provide the jury with the tracks' lyrics. The court overruled defendant's objection because these particular tracks were identified as his, their presentation was not cumulative, and the presentation would not unduly consume time.

The lyrics to the first track, track 2, were transcribed as follows:[6] "(inaudible) Santos Inaudible) Representin not pretending with the 530.[7] I carry a gat, smoke a sack, of the (inaudible.) I put Chico on the map, Fuck a bitch ass scrap (inaudible). Throw up the one four.[8] Everyday we play this gangster role, kill a scrap we throw into a ditch. Fuck (inaudible) tricks while I talk to my click that's some serious shit. This is Chico Cali so sick with the sickness, semiautomatic sums up with quickness, so quiz this mother fucker, tuck it down. Better watch your back cause fuckin driven in town. Caught a scrap that was slippin,[9] grab my glock (inaudible) not given a fuck. If your fuckin with me I straight fuck you myself (inaudible) Politics and gangster shit, Chevrolet, our philosophy fuckin' here we go, smoken on a pound, players from Chico, smebbin through the town, politics and gangster shit, Chevrolet, our philosophy mother fuckers here we go, smokin' on a pound, players from Chico, smebbin through the town."

Portions of the second track, track 6, were transcribed as follows: "Player I be comin' through when I'm lookin' way too fresh, and I got a glock stuck in pants mother fucker so don't test. You know nothin' about these gangsters representin' Chico, we be mobbing through your town throwin' up the one four. . . . [¶] We play every day all day bitch in the struggle to get paid, and with no hesitation pullin' out the .12 gauge, I'm coming way too sick man, it sounds like I've been blessed, and when I'm on the block I look my best, I look too fresh, I'm a straight-up hustlin' pimp, mother fucker can't you see, what you got one fine-ass bitch trick, I've got like two or three, so you mother fuckers want to kill (inaudible) guard your house and load the gate mother fucker I'm about to retaliate, creepin' up in your window, puttin' a slug into your face, slippin' and sliding outta the scene so bad I don't catch a case,[10] (inaudible) from almighty Chico, oh you know we don't have a play, when I realize hangin' ain't gonna happen just doing our gangster thing, I'm a hoggin' doggin' player bitch and I been that way so long, just take a hit of the dojo weed as you're listenin' to this song, take a 40 (inaudible) hit that shit until it's gone. [¶] . . . [¶] (Inaudible) blunts and broken jugs (inaudible)

---

[6] We quote verbatim from the transcripts, which contain inconsistent and incorrect spellings and punctuation.

[7] This line informs the Chico community (area code 530) that they are a serious gang.

[8] The number 14, a symbol of the Norteños.

[9] A rival gang member in a Norteño neighborhood by mistake.

[10] Shooting someone in the face, then getting out of the area so as not to get arrested and prosecuted.

lift it on my homie's back and (inaudible) Northside rider 'til I die, throwin' fists while (inaudible) tryin' hard to stay alive, well we survive this shit through the streets of Chico Cali, this Mr. Ish, with a bit of sickness, Northern Cali's where I be with my homies next to me, ready to ride and ready to see ready to make these scrapas bleed hit the spot and make it crack, with a fifth of the cognac, 530 and we go blow, with my .44 I'll let 'em know, it's northern Cali we'll (inaudible) so we come up. Rollin' hard I give a fuck, I'm runnin' up flamed up,[11] 'cause I'm feeling luck, it ain't no game and my homies bring pain through the thunder and the rain, don't blame me I be outta the double V[12] like a G I stay high, northside is how I ride and that's how it's gonna be, this is VCN write it N-O-R-T-E. [¶] . . . [¶] Chico Chapmantown (Inaudible) hosin' up off the strip, we (inaudible) and damn sure we (inaudible) Nortenos collide we ride, pullin' the homicide, we be comin' through your town, like we livin' so fresh, you old bitch ass scrap better shove up your vest, (inaudible) puttin' to rest, lookin' at my barrel with your very last breath and that it was kept, a 40 and a blunt with a Hennessy fifth, mobbing through the town, pullin' that gangster shit puttin' it down for that Norte click they say only the strong survive but that's only just a lie, the biggest mother fucker caught steel between his eyes, now he's lying dead, checked out, no (inaudible) nine millimeter (inaudible) when I creep and you know is sayin' straight runnin' the gang who is the black (inaudible) the scrap's name still runnin' the same."

## B. *Analysis*

Defendant claims this evidence was cumulative. His belonging to the Norteños, the gang's violent character, and its animosity towards the Sureños were not in dispute. The lyrics, he says, added nothing to these issues.

He also claims the evidence was prejudicial. The lyrics allegedly were works of fiction presuming to be art. Such lyrics did not necessarily indicate defendant's state of mind or his intent to commit a crime. Moreover, their impact obscured the force of defendant's evidence that someone else present at the scene was the shooter.

We disagree with defendant's contentions.

■ Evidence Code section 352 provides the trial court with discretion to exclude otherwise relevant evidence if its probative value is substantially outweighed by the probability that admitting the evidence will unduly prolong the proceeding, prejudice the opposing party, confuse the issues, or

---

[11] "Flamed up" refers to being dressed in the color red.

[12] The Vista Verde apartment complex in Chico.

mislead the jury. (*People v. Kirkpatrick* (1994) 7 Cal.4th 988, 1014 [30 Cal.Rptr.2d 818, 874 P.2d 248].) "We apply the deferential abuse of discretion standard when reviewing a trial court's ruling under Evidence Code section 352. [Citation.] . . . [For purposes of the statute,] 'prejudicial' is not synonymous with 'damaging,' but refers instead to evidence that ' "uniquely tends to evoke an emotional bias against defendant" ' without regard to its relevance on material issues. [Citations.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121 [113 Cal.Rptr.2d 27, 33 P.3d 450].)

The trial court did not abuse its discretion in determining the two tracks were not unduly prejudicial under Evidence Code section 352. The evidence's probative value was not substantially outweighed by its prejudicial impact.

The evidence was probative of defendant's state of mind and criminal intent, as well as his membership in a criminal gang and his loyalty to it. The songs showed that defendant's gang had the motive and intent to kill Sureños. This evidence, although anticipatory, was explicitly relevant to the charges against defendant. (See *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1372–1373 [37 Cal.Rptr.2d 596] [trial court properly admitted over Evid. Code, § 352 objection rap lyrics written by defendant that demonstrated his membership in a gang, his loyalty to it, his familiarity with gang culture and, inferentially, his motive and intent on the day of the killing].)

While lyrics and poems do not often establish their author's true state of mind (see, e.g., *In re George T.* (2004) 33 Cal.4th 620, 636–639 [16 Cal.Rptr.3d 61, 93 P.3d 1007] [lyrics of particular poem, with its ambiguity and lack of incriminating circumstances, did not amount to a criminal threat]), the gang expert here testified that gangs communicate through music. Defendant's communications here were not ambiguous or equivocal. These lyrics, coupled with the other evidence of defendant's gang membership and his animosity towards Sureños, go beyond mere fiction to disclosing defendant's state of mind, his motives and intentions, and his fealty to furthering his criminal gang's activities.

The evidence was not unduly prejudicial. Only two of the six tracks credited to defendant were played to the jury. The tracks provided noncumulative evidence of defendant's state of mind and his gang association, differing in context from his tattoos, drawings, notebooks, and pictures of himself flashing gang signs. The language and substance of the lyrics, although graphic, did not rise to the level of evoking an emotional bias against defendant as an individual apart from what the facts proved.

The trial court did not abuse its discretion by admitting the evidence.

## DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 17, 2008, S167778.