Filed 8/19/14  P. v. Young CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICKY LARAY MCDADE YOUNG,<br><br>    Defendant and Appellant. | A138043<br><br>(Solano County<br>Super. Ct. No. VCR207979 ) |

Ricky Laray McDade Young (appellant) appeals from judgment entered after a jury convicted him of second degree robbery (Pen. Code, § 211[1]).  He contends the judgment must be reversed because:  (1) the district attorney committed prosecutorial misconduct; and (2) the definition of reasonable doubt in CALCRIM No. 220 violates due process.  We reject the contentions and affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

An information was filed on February 17, 2011, charging appellant with second degree robbery (§ 211, count 1) and child abuse or endangerment (§ 273a, subd. (a), count 2).  The child abuse charge was later dismissed on appellant's motion.

The information was based on an incident that occurred on June 18, 2010.  At about 1:21 p.m. that afternoon, Luanna M. was sitting in her car in a parking lot behind a hotel, enjoying the last few minutes of her lunch break.  An African American male who "looked like he'd be around 18 [years old]" came up to Luanna's passenger side window

---

[1]All further statutory references are to the Penal Code.

and motioned to his watch, as if asking what time it was.  He then walked around to the driver's side window, pulled out a gun (later determined to be a BB gun), and asked for her purse.  Luanna was scared and asked the man—later identified as L.C., a minor—if he wanted her wallet or her whole purse.  L.C. asked for just her wallet, and she gave it to him.  The wallet contained "a little bit over $100 . . . in cash, debit cards, credit cards, [her] checkbook, and various other cards."  After taking the wallet, L.C. ran around the front of her car and "jumped into" an older dark model Ford Mustang that had pulled up alongside Luanna's car.  The Mustang "took off" "immediately."  Luanna estimated that about 10 seconds elapsed between L.C. taking her wallet and the Mustang pulling up.  Luanna did not get a good look at the driver as he drove away but saw that he was an African American male.  Luanna tried to follow the Mustang but lost sight of it after "a couple blocks."  She called 911 and reported the robbery.

Just two minutes later, Deputy Melvin Yarbor of the Solano County Sheriff's Office was patrolling I-80 when he noticed a Mustang weaving and driving slowly in the fast lane.  Unaware of the robbery, but suspecting that the driver might be intoxicated, Yarbor initiated a traffic stop.  It took the driver of the Mustang, who was later identified as appellant, about a half mile to pull over, and Yarbor noticed the passenger—L.C.— moving around in the car.  After Yarbor talked to appellant and L.C., Yarbor heard a dispatch report that two men had fled a robbery in a dark Mustang.  Thinking he might have detained the suspects, Yarbor called for backup.  Backup officers who arrived searched the Mustang.  They found a BB gun under the passenger seat, and found two of Luanna's credit cards between appellant's seat and the seat cover.  They also found Luanna's wallet inside "the back trunk area" of the Mustang.  Luanna was brought to the scene, where she identified L.C. as the robber and the Mustang as the getaway car.  Defense counsel argued in closing that appellant did not know L.C. was going to rob Luanna.

The jury convicted appellant of second degree robbery.  On February 25, 2013, the trial court sentenced appellant to three years of formal probation.

2

## DISCUSSION

### *1. Prosecutorial Misconduct*

Appellant contends the prosecutor engaged in prosecutorial misconduct by arguing in closing that appellant had not presented any evidence to support his asserted defense. We reject the contention.

### *a. Background*

The prosecutor argued in closing that there was sufficient circumstantial evidence to establish that appellant knew L.C. was going to rob Luanna and intentionally aided him by driving the getaway car. The prosecutor also explained that he had the burden of proof: "for you as jurors to convict [appellant] as an aider and abettor in this case, I have to prove certain elements." Defense counsel argued that the circumstantial evidence was amenable to other reasonable interpretations, and that the jury must therefore find appellant not guilty. Defense counsel argued, "one reasonable interpretation is that . . . [L.C. and appellant] . . . had a preplanned meeting time. Said, hey, at 1:30 come pick me up. I'm going to be at Starbucks. [Appellant] pulls up, sees [L.C.], [L.C.] gets in the car." Defense counsel also emphasized several times that the prosecution had the burden of proving each element beyond a reasonable doubt.

In response to appellant's asserted defense, the prosecutor argued on rebuttal that "the only person who said that it was [L.C.'s] plan was not a witness in the case. It's his attorney. There was no evidence. Evidence is what's presented by the witness when they testified. The only person that stated that was [defense counsel], who said [L.C.]." Defense counsel objected at that point that the prosecutor was "burden shifting," but after a bench conference, the trial court overruled the objection. The trial court later explained its ruling by stating that the prosecutor was simply commenting on the lack of evidence offered in support of the defense theory, and that he had refrained from making any further comments on the topic after the objection. The prosecutor concluded his rebuttal by stating: "All I want to say about that is, what I argue up here is not evidence. What [defense counsel] argues up here is not evidence. Go back, look at the facts of this case, look at what was presented, and come back with a verdict of guilty on this case."

3

### b. Discussion

Prosecutorial misconduct is reversible error "when it infects the trial with such unfairness as to make the conviction a denial of due process." (*People v. Morales* (2001) 25 Ca1.4th 34, 44.)  A prosecutor's conduct that does not render the trial fundamentally unfair is misconduct "only if it involves the use of deceptive or reprehensible methods to attempt to persuade" the trier of fact.  (*Ibid.*)  A prosecutor is given "wide latitude during argument" (*People v. Wharton* (1991) 53 Cal.3d 522, 567), and appellate courts do not analyze isolated words or phrases, but instead "must view the statements in the context of the argument as a whole" (*People v. Dennis* (1998) 17 Cal.4th 468, 522).

The prosecution may not make direct or indirect reference to the defendant's decision not to testify on his own behalf.  (*Griffin v. California* (1965) 380 U.S. 609, 613 [85 S.Ct. 1229, 14 L.Ed. 2d 106] (*Griffin*).)  *Griffin* " 'does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses.' " (*People v. Vargas* (1973) 9 Cal.3d 470, 475.)  As the California Supreme Court explained in *People v. Bradford* (1997) 15 Cal.4th 1229, 1339–1340, "A distinction clearly exists between the permissible comment that a defendant has not produced any evidence, and on the other hand an improper statement that a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence." (See *People v. Woods* (2006) 146 Cal.App.4th 106, 113 [prosecutor may comment on defendant's failure to offer material evidence but may not state that defendant is "obligated" to offer such evidence].)  Accordingly, the California Supreme Court has routinely rejected claims of misconduct where the prosecutor merely commented on the lack of evidence offered by the defense or the defendant's failure to call logical witnesses.

For example, in *People. v. Ratliff* (1986) 41 Cal.3d 675, 691, the California Supreme Court concluded the prosecutor had not engaged in misconduct when he stated, " 'Now is there any evidence on the other side?  Any evidence at all?  None has been presented to you.  Absolutely zero has been presented to you by [the defendant] and his attorney.' " In *People v. Johnson* (1989) 47 Cal.3d 1194, 1236, there was no error where

4

the prosecutor said: " 'Ladies and gentlemen, you have now heard the entirety of the case . . . . Obviously, if there has been some or is some defense to this case, you'd either have heard it by now or for some reason nobody's talking about it.' " In *People v. Morris* (1988) 46 Cal.3d 1, 36, disapproved on other grounds by *In re Sassounian* (1995) 9 Cal.4th 535, 543, footnote 5, the prosecutor did not engage in misconduct when he stated there was " 'not a shred of evidence to suggest that anybody else did the killing,' " and when he stated, " 'put yourself in the position of being a defendant and you can bet your boots that if you had anything to offer by way of evidence, by way of alibi, that you would offer it,' " and " 'You don't have it.' " In each of these cases, the prosecutor made no reference to the defendant's decision not to testify, but instead, permissibly commented on the defendant's failure to offer any material evidence to support his asserted defenses. (See *People v. Gonzalez* (2012) 54 Cal.4th 1234, 1275 ["As for the prosecutor's reference to witnesses not called, it is neither unusual nor improper to comment on the failure to call logical witnesses"].)

Similarly, here, the prosecutor did not at any time comment on appellant's decision not to testify, and did not suggest that appellant had the burden of presenting evidence to establish his lack of intent or knowledge. Rather, he merely responded to the asserted defense that appellant did not know L.C. was planning to rob Luanna, by pointing out that there was no evidence to support that theory. The prosecutor also correctly pointed out that he had the burden of proof in the case, and that neither his nor defense counsel's arguments were evidence.

In any event, we note that any error in allowing the prosecutor to make the statements he did was harmless under any standard. First, there was ample evidence to support the conviction. Appellant pulled up in the Mustang within 10 seconds of the robbery, L.C. jumped into the car without any conversation or delay, and the Mustang immediately took off. After Yarbor initiated a traffic stop, appellant continued to drive for about a half mile before finally pulling over, during which time L.C. was seen moving around inside the car, presumably hiding the loot, which was found in various parts of the car. There was no evidence that either appellant or L.C. had done any shopping at the

5

mall, or that they had been there for any other purpose but to rob Luanna. Against this significant evidence of guilt, appellant offered no evidence.

Moreover, any confusion caused by prosecutor's comments were cured by the repeated instructions from the prosecutor, defense counsel, and the court, that the prosecution had the burden of proving each element of the crime, including appellant's knowledge and intent. In light of the ample evidence and the proper instructions, we conclude that any error was harmless beyond a reasonable doubt.

### 2. CALCRIM No. 220 – Reasonable Doubt

#### a. Background

The trial court instructed the jury with CALCRIM No. 220, which states in part: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt. [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty." Defense counsel did not object to this instruction.

In her closing argument, defense counsel explained the "abiding conviction" language in CALCRIM No. 220: "[W]hat that means is, if you were to go back and ten years down the line, five years down the line, you have to say I'm comfortable that they've proven each and every element beyond a reasonable doubt, that . . . the only explanation was for guilt, that there was no other reasonable explanation that could have occurred. That's proof beyond a reasonable doubt."

### b. Discussion

To preserve the issue and "urge this Court to suggest that our Supreme Court reexamine it," appellant contends that the definition of reasonable doubt in CALCRIM No. 220 violates due process because it "merely tells the jurors that they need to expect to remain convinced (i.e., have a "conviction") of the truth of the charge for a prolonged period ("abiding"), without telling them *how* convinced they must be." Appellant forfeited the claim by failing to raise it below. (*People v. Scott* (1994) 9 Cal.4th 331, 351 [lack of a timely objection forfeits a claim on appeal].) The claim also fails on the merits.

In *Victor v. Nebraska* (1994) 511 U.S. 1, 14–15 [114 S.Ct. 1239, 127 L.Ed.2d 583] (*Victor*), the United States Supreme Court upheld modified CALJIC No. 2.90 (a precursor to CALRIM No. 220), ruling that a reasonable doubt instruction "cast in terms of an abiding conviction as to guilt, without reference to moral certainty, correctly states the government's burden of proof." The Supreme Court stated that "so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." (*Id.* at p. 5 [114 S.Ct. at p. 1242].) In reliance on *Victor*'s approval of the instruction as satisfying due process requirements, the California Supreme Court has repeatedly rejected the contention that CALCRIM No. 220 violates due process. (E.g., *People v. Stone* (2008) 160 Cal.App.4th 323, 334 [rejecting claim that " 'abiding conviction' " is " 'a standard for "duration" but not the "degree of certitude" jurors must have' "]; *People v. Zepeda* (2008) 167 Cal.App.4th 25, 30–32; *People v. Garelick* (2008) 161 Cal.App.4th 1107, 1117–1118; *People v. Campos* (2007) 156 Cal.App.4th 1228, 1238–1239; *People v. Guerrero* (2007) 155 Cal.App.4th 1264, 1267–1269.) Because decisions of the United States and California Supreme Courts are binding on this court, and we find the analyses in the court of appeal decisions cited above to be persuasive, we reject appellant's constitutional challenge to the abiding conviction language in CALCRIM No. 220.

### DISPOSITION

The judgment is affirmed.

_____
McGuiness, P.J.

We concur:


_____
Pollak, J.


_____
Siggins, J.