Filed 11/22/22 P. v. Kilgore CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LONNIE CHARLES KILGORE,<br><br>Defendant and Appellant. | C091113<br><br>(Super. Ct. No. 17FE001073)<br><br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed in this case on October 31, 2022, be modified as follows:

On page 18, footnote 3, replace the language in footnote 3 with the following:

On April 14, 2022, defendant moved to join in an argument regarding section 1109 in codefendant Ackerson's second supplemental opening brief in case No. C090994.  And on June 16, 2022, defendant moved to join in an argument regarding section 1109 in codefendant Gi's supplemental reply brief in case No. C090994. Assembly Bill No. 333 added section 1109, which mandates a separate trial of a section 186.22, subdivision (b) gang enhancement allegation if requested by the defense. (Stats. 2021, ch. 699, § 5 [§ 1190, subd. (a)].)  We interpret defendant's April 14 and June 16 motions as having sought to assert arguments pertaining to the gang

1

enhancement findings, and we deny the motions as moot because we have determined the gang enhancement findings must be vacated.

In his petition for a rehearing, defendant claimed the section 1109 argument he had wished to make in this appeal would have asked this court to reverse his conviction on the substantive charges. He said he asked for rehearing to be allowed to file a supplemental brief to flesh out that issue. Defendant asserted that his motions to join in codefendants' arguments reflected his wish to raise that claim. Also in support of his petition for rehearing, defendant referenced his March 4, 2022 motion in this court seeking permission to file a second supplemental brief, a motion that this court denied. But none of those filings clearly articulated the claim defendant seeks to assert on rehearing. In his March 4, 2022 motion, defendant observed that in his first supplemental opening brief he argued that his gang enhancements should be reversed because of amendments to section 186.22 enacted by Assembly Bill No. 333, and he stated that he wished to raise additional Assembly Bill No. 333-related issues, including an argument regarding section 1109. His motion did not clearly indicate defendant sought to raise a new argument for reversal of his substantive convictions. Later, defendant moved to join in and adopt by reference the argument raised in his codefendants' briefs that the trial court prejudicially erred in refusing to bifurcate the gang enhancements as requested by the defense. Nowhere in either of those two motions did defendant clearly articulate that, by seeking to join in his codefendants' arguments regarding Penal Code section 1109, he thereby sought to change the claim he raised in his supplemental opening brief.

This modification does not change the judgment.

The petition for rehearing is denied.

FOR THE COURT:


_____/S/_____
ROBIE, Acting P. J.


_____/S/_____
MAURO, J.


_____/S/_____
HOCH, J.

2

Filed 10/31/22 P. v. Kilgore CA3 (unmodified opinion)

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C091113 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 17FE001073) |
| LONNIE CHARLES KILGORE, | |
| Defendant and Appellant. | |

A jury convicted defendant Lonnie Charles Kilgore and codefendants Elton Ackerson, Dereck Gi, Jr., and Malik Green-Geiger of willful, deliberate, and premeditated attempted murder, and found true gang enhancement allegations. The trial court sentenced defendant to a determinate term of 17 years four months and an indeterminate term of 39 years to life in prison.

1

Defendant now contends (1) his conviction is based on an invalid theory of criminal liability, (2) willful, deliberate, and premeditated attempted murder was not alleged in the accusatory pleading, (3) two rap videos should not have been admitted into evidence, (4) the trial court improperly denied a defense request to instruct the jury on a lesser-included offense, and (5) we must reverse the gang-related enhancement in light of recent statutory changes made by Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 699.)

Finding merit in the fifth contention, we will affirm the convictions, vacate the gang-related enhancement findings, and remand for further proceedings.

## BACKGROUND

On October 20, 2016, M.G. parked his car in front of a relative's house on High Street in Sacramento. When he got out of the car, a bullet struck him in the groin. Another 10 shots or more, from at least two guns, were fired at M.G.

Witness No. 1 was repairing a fence at a nearby house that day, and he saw the shooting as he crossed the street to borrow a ladder. He remembered a dark-colored sedan sped away after the shooting and had been parked in a crooked manner on the street. Witness No. 2 was on her front porch when she heard multiple shots and ran inside with her son. When she looked out her front window, she saw a black Lexus backing out of the street. A lighter-colored car left the area headed in the same direction just before the black Lexus.

Police found 9-millimeter casings and .45-caliber casings at the scene. That day there had been calls between the codefendants, but the calls stopped for a period of time. There was evidence that the cell phones of defendant and some of the codefendants had been at Strawberry Manor Park and near the apartment of one of the codefendants. Gi's phone had also been near the location of the shooting. A global positioning system tracker that had been placed on Ackerson's silver Lexus before the shooting indicated that the Lexus had been at Strawberry Manor Park.

2

Around 14 minutes before the shooting, a police camera captured video footage of Green-Geiger's dark-colored Lexus at an intersection about three blocks away from the shooting. In front of the dark-colored Lexus and traveling in the same direction was Ackerson's silver Lexus and Gi's silver Chrysler 200. A private video camera close to the shooting captured a silver Chrysler 200 about 20 seconds after the shooting, and a dark-colored Lexus about 26 seconds after the shooting.

An expert on criminal street gangs in Sacramento testified that in his opinion, defendant and the codefendants were members of subsets of the Oak Park Bloods criminal street gang, one of two "primary gangs that are against each other in Sacramento" under which "the other smaller gangs line up." The expert explained to the jury how, in numerous social media posts (some of which the jury saw), defendant and the three codefendants displayed guns and gang signs, wore gang clothing, and made gang-related comments. Some of the posts showed them together. For example, People's exhibit No. 92 was a photograph of all four men (and several others), and People's exhibit No. 97 was a photograph posted to Green-Geiger's social media account that showed defendant with Green-Geiger and Gi.

Over defense objections, the jury also saw two rap music videos in which defendant and some of his codefendants appeared.

The expert said he believed the shooting victim was affiliated with a criminal street gang that was with the main rival of the Oak Park Bloods. A detective had testified earlier that the neighborhood where the shooting occurred was claimed by the rival gang.

After the prosecutor presented a hypothetical scenario that mirrored many of the facts surrounding the shooting in this case (including the different subset gang memberships of defendant and the codefendants, and that the hypothetical gang members were all previously acquainted and traveling in a straight line in three separate cars), the expert explained that a shooting of the rival gang member by the representatives of the

entire gang benefitted the gang that committed the shooting because they are taken seriously.

Using CALCRIM No. 416, the trial court instructed the jury on uncharged conspiracy as a theory of liability, identifying attempted murder as the substantive offense that was the object of the conspiracy. The trial court explained: "The People have presented evidence of a conspiracy. A member of a conspiracy is criminally responsible for the acts or statements of any other member of the conspiracy done to help accomplish the goal of the conspiracy. To prove the defendant is a member of a conspiracy, the People must prove that [1] the defendant intended to agree and did agree with one or more of the other defendants to commit the attempted murder. [2] [A]t the time of the agreement, the defendant and one or more of the other alleged members of the conspiracy intended that one or more of them would commit attempted murder. [3] [O]ne of the defendants committed at least one of the following overt acts to accomplish attempted murder: [a], drove from Strawberry Manor into Del Paso Heights, or, [b], brought a loaded handgun into Del Paso Heights from Strawberry Manor, or, [3], shot [M.G.], and, [4], at least one of these overt acts was committed in California.

"To decide whether a defendant or another member of the conspiracy committed these overt acts, consider all of the evidence presented about the acts. [¶] To decide whether a defendant and one or more of the other alleged members of the conspiracy intended to commit attempted murder, please refer to the separate instructions that I will give you on that crime. [¶] The People must prove that the members of the alleged conspiracy had an agreement and specific intent to commit attempted murder. The People do not have to prove that any of the members of the alleged conspiracy actually met or came to a detailed or formal agreement to commit that crime. An agreement may be inferred from conduct if you conclude that members of the alleged conspiracy acted with a common purpose to commit the crime."

4

The trial court instructed the jury on attempted murder using CALCRIM No. 600, explaining: "The [d]efendants are charged in Count 1 with attempted murder. To prove the defendant is guilty of attempted murder, the People must prove that [1] the defendant took at least one direct but ineffective step toward killing [M.G.], and [2] the defendant had the specific intent to kill [M.G.]."

The trial court and the parties had discussed potential jury instructions, including CALCRIM No. 601 [willful, deliberate and premeditated attempted murder], before the People rested. There was no objection to the trial court's proposal to instruct the jury with CALCRIM No. 601. Accordingly, the trial court instructed: "If you do find a defendant guilty of attempted murder under Count 1, you must then decide whether the People have proved the additional allegation that the attempted murder was done willfully, and deliberately and with premeditation. [¶] The defendants acted willfully if they intended to kill when they acted. The defendants . . . deliberated if they carefully weighed the considerations for and against the choice and knowing the consequences decided to kill. The [d]efendants acted with premeditation if they decided to kill before completing the act of attempted murder."

In closing argument, the prosecutor argued that the uncharged conspiracy was the legal way to hold everybody accountable for their actions in this case. "These guys had an agreement to do what they did. They all drove into a neighborhood together, and they did what they did. It doesn't matter . . . who was where or who did what, as long as one of them did it, something in furtherance of the conspiracy, which is exactly what happened." The prosecutor further argued: "In this case what evidence do you have of an attempted murder? These guys were in Strawberry Manor Park for an hour. . . . They agreed to travel into rival gang territory to kill a rival gang member. . . . [¶] They tried. Okay? This is your direct, but ineffective step. You can pick any number of steps in this case. Driving there, bringing a gun, those are steps as well. They tried. Fourteen times with two shooters." The prosecutor added: "Members of a gang don't travel into rival

5

gang territory, three-cars deep, multiple-guns deep, fire fourteen rounds at another person, without trying to kill them." "The ineffective step is that they failed. They don't get off the hook for trying to kill [the victim] just because they stink at shooting. . . . . They failed to kill him, but they did hit him."

A bit later, the prosecutor said: "This was an attempted murder. Don't let anybody else sell you anything else. [¶] . . . [¶] This is the allegation underneath the attempted murder, that it was done with premeditation and deliberation, okay?"

Returning to the uncharged conspiracy, the prosecutor said: "In this case what you have is a planned, conscious decision to hunt down rival gang members in the middle of the day on October 20th of 2016. All members who decided to do this, everybody, are liable for the shooter's acts. Everybody is responsible in a conspiracy. [¶] These are the requirements: Each defendant intended to agree and did agree to commit attempted murder. . . . The defendant and at least one other intended that at least one member would commit attempted murder. [¶] . . . [¶] At least one defendant did at least one of these . . . overt acts . . . ."

Addressing the alleged agreement between the defendants, the prosecutor said: "There needs to be an agreement to do this. How do you prove an agreement? . . . [¶] Number one, proof of a physical meeting is not required, but you have it. . . . It is not required, but you have it, at Strawberry Manor Park." The prosecutor argued the reason there were no cell phone calls between the codefendants for a certain period of time that day was because they were meeting together. "These guys were calling each other throughout the entire morning, and then the calls stopped for this period of time." The prosecutor argued "an agreement between these four defendants can be inferred from the conduct itself of the conspirators. . . . Traveling together . . . after meeting in the Manors. An agreement can be inferred from what they are doing."

In defense counsel's closing argument, counsel conceded that defendant was at the park on the day of the shooting, but argued there was no evidence of a meeting there and

6

no evidence defendant was on High Street that day. Defense counsel added that although there was evidence that defendant's cell phone was on the street of a codefendant's apartment after the shooting, there was no evidence defendant was there and not just the phone.

The jury found defendant and the codefendants guilty of attempted murder. (Pen. Code, §§ 664, 187, subd. (a) -- count 1).[1] As relevant here, the jury further found (i) the attempted murder was done willfully and with deliberation and premeditation; (ii) one of the principals personally used and personally discharged a firearm during commission of the crime, causing great bodily injury (§§ 12022.53, subds. (b), (c), (d)); and (iii) defendant committed attempted murder for the benefit of, at the direction of or in association with a criminal street gang with the specific intent to promote, further or assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)).

The jury also found defendant guilty of being a felon in possession of a firearm (§ 29800, subd. (a)(1)) and unlawful possession of ammunition (§ 30305, subd. (a)(1)) and found true the gang enhancement allegations associated with those offenses. Defendant admitted a prior serious felony conviction under section 667. The trial court sentenced defendant to a determinate term of 17 years four months in state prison, plus an indeterminate term of 39 years to life for the attempted murder, consisting of 14 years to life for the substantive offense (seven years to life doubled under the three strikes law) (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)), plus 25 years to life for the firearm enhancement under section 12022.53, subdivision (d).

---

[1] Undesignated statutory references are to the Penal Code.

DISCUSSION

I

Defendant contends his conviction is based on an invalid theory of criminal liability. Invoking this court's decision in *People v. Iniguez* (2002) 96 Cal.App.4th 75, 79 (*Iniguez*), defendant argues there is no such thing as conspiracy to commit attempted murder. He claims that because no other theory was presented at trial, his attempted murder conviction must be reversed.

The People counter that the claim is forfeited because defendant did not raise it in the trial court. We will address the merits of the contention, however, because a contention of conviction on an invalid legal theory need not be preserved by objection in order to be considered on appeal. (*People v. Powell* (2021) 63 Cal.App.5th 689, 710 (*Powell*); see *People v. Valdez* (2012) 55 Cal.4th 82, 151.)

In addition, the People argue *Iniguez* is distinguishable because here defendant was not convicted of conspiracy, and any error was harmless because the jury found defendant had the specific intent to commit a willful, deliberate, and premeditated murder.

California Supreme Court decisions have " 'long and firmly established that an uncharged conspiracy may properly be used to prove criminal liability for acts of a coconspirator. [Citations.] "Failure to charge conspiracy as a separate offense does not preclude the People from proving that those substantive offenses which are charged were committed in furtherance of a criminal conspiracy [citation]; nor, it follows, does it preclude the giving of jury instructions based on a conspiracy theory [citations]." [Citation.]' " (*People v. Valdez, supra*, 55 Cal.4th at p. 150.)

In *Iniguez*, the defendant pleaded guilty to conspiracy to commit attempted murder. (*Iniguez, supra*, 96 Cal.App.4th at pp. 77, 79) This court reversed the conspiracy conviction because the target crime of the conspiracy, attempted murder, required the specific intent to actually commit murder, but an agreement forming the

8

basis for the conspiracy to commit attempted murder would require agreement to an ineffectual act. (*Ibid.*) Concluding that "[n]o one can simultaneously intend to do and not do the same act," the inconsistency in the required mental states made the purported conspiracy to commit attempted murder a legal falsehood. (*Ibid.*)

Here, the trial court should not have instructed the jury on conspiracy to commit attempted murder. But " '[m]isdescription of an element of a charged offense is subject to harmless error analysis and does not require reversal if the misdescription was harmless beyond a reasonable doubt.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 69; see *People v. Aledamat* (2019) 8 Cal.5th 1, 11-12 [if the trial court instructs the jury with only an invalid theory of liability, harmless error review, under *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705], is appropriate].)

We agree with the People that in this case, *Iniguez* is inapposite and the trial court's instructional error was harmless. Unlike in *Iniguez*, here defendant was not convicted of conspiracy to commit attempted murder. Rather, he was convicted of attempted murder, and the jury found that he acted willfully and with deliberation and premeditation. The actual conviction and findings are not based on an inconsistency in the required mental state. And the conviction and findings are consistent with the focus of the prosecutor's closing argument that defendant and his codefendants made a plan to travel into rival gang territory to kill a rival gang member. (*Powell, supra*, 63 Cal.App.5th at p. 715 [prosecutor did not rely on the invalid theory].) Under the circumstances, the challenged instruction was harmless under *Chapman*. (Cf. *Boyde v. California* (1990) 494 U.S. 370, 380-381 [108 L.Ed.2d 316][a commonsense understanding of the instructions in the light of all that has taken place at the trial is likely to prevail over technical hairsplitting].)

9

## II

Defendant next contends the accusatory pleading did not allege willful, deliberate, and premeditated attempted murder, and therefore it was improper for the trial court to impose a sentence based on that finding.

The People agree the pleading did not allege premeditation and deliberation, but they argue, among other things, that the error is harmless because defendant points to nothing he would have done differently. We agree that the failure to allege willful, deliberate, and premeditated attempted murder was harmless.

Section 664, subdivision (a), provides: "[I]f the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole. . . . The additional term provided in this section for attempted willful, deliberate, and premeditated murder shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact." (See generally *People v. Houston* (2012) 54 Cal.4th 1186, 1226-1228 [considering a claim pursuant to § 664, subd. (a)].) However, section 960 provides: "No accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits."

Here, whether the pleading error was harmless is a question of state statutory law. (See §§ 664, subd. (a), 960; *People v. Anderson* (2020) 9 Cal.5th 946, 963 (*Anderson*) [citing § 960 as the relevant statute for purposes of harmless error analysis]). Thus, we apply the "reasonably probable" standard of *People v. Watson* (1956) 46 Cal.2d 818, 836, and defendant bears the burden of showing that he would have acted differently had the error not occurred. (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 181.)

10

In *Anderson*, the California Supreme Court rejected the People's harmless error argument, explaining that when the defendant learned of the prosecutor's actual intentions regarding the enhancements midway through the sentencing hearing, it was too late to consider the prosecution's pretrial plea deal or reshape defendant's trial strategy. (*Anderson, supra*, 9 Cal.5th at p. 964.)

In this case, however, the trial court informed the parties, before the People rested, that it planned to instruct on premeditation and deliberation. Defendant does not show how he would have acted differently had there been a properly pleaded allegation of premeditation and deliberation. Rather, defendant claims the People's harmless error argument is speculative. But because defendant bears the burden of showing that he would have acted differently had the error not occurred, and he has not met that burden, his claim fails. (*People v. Thomas* (1987) 43 Cal.3d 818, 826, 832 [even if the accusatory pleading was defective, defendant has not demonstrated he was misled to his prejudice and reversal is therefore inappropriate].)

III

In addition, defendant argues the two rap videos should not have been admitted into evidence.

Invoking Evidence Code section 352, defendant sought to prevent admission at trial of two rap videos in which he appeared. He argued the videos were cumulative of other evidence and introduction of the videos would have a prejudicial effect because rap music is disliked by so many people. The prosecutor countered that the videos were probative as to the gang enhancement and defendant's state of mind. The trial court concluded the potential prejudice did not substantially outweigh the probative value of the evidence.

The jury saw the rap videos, which had been on YouTube, when the gang expert testified. The expert said there were many things about the videos that were important to him in forming his opinions about the case, including the lyrics, visible tattoos, gang

11

signs, gang callouts, filming locations, and clothing. The expert identified Ackerson, Green-Geiger, and defendant in the videos. Referring to the lyrics "N-words breaking the code and they telling on they own, Blood," the expert said the lyrics were talking about snitching in the gang world. The expert continued, "If you saw in the video [defendant] was pulling on [Green-Geiger's] sweatshirt, as he is saying Gunnas at Play leave your ass fucking smoked. [W]e all know what the term 'smoked' means. It means to kill somebody."

The expert further referenced lyrics about gang members riding around town four deep with firearms, shooting in the neighborhood and at rival gang members, and the ritualized candlelight mourning of killed gang members. The expert said defendant sang about killing opposing gang members in Sacramento and a running scoreboard of killings between defendant's gang and a rival gang.

In addition, the expert referenced the following lyrics: "Fuck the world, you fuck with them, you N-words going to be ducking with them. Your bitches get hit too. Fair game if you fucking with them." The expert said defendant was saying, "fuck Del Paso Heights, and if you are with a gang member from Del Paso Heights or you are anywhere around a gang member, it doesn't matter if you are a female, you are going to get shot at too." The expert said the rap videos were made to disrespect rival gangs, not for entertainment purposes.

The trial court instructed the jurors they could consider evidence of gang activity only to decide whether the defendant acted with the intent, purpose and knowledge required to prove the gang-related crimes and enhancements charged, or to decide that defendant had a motive to commit the crimes charged.

"Evidence Code section 352 provides the trial court with discretion to exclude otherwise relevant evidence if its probative value is substantially outweighed by the probability that admitting the evidence will unduly prolong the proceeding, prejudice the opposing party, confuse the issues, or mislead the jury. [Citation.] 'We apply the

deferential abuse of discretion standard when reviewing a trial court's ruling under Evidence Code section 352. [Citation.] . . . [For purposes of the statute,] "prejudicial" is not synonymous with "damaging," but refers instead to evidence that " 'uniquely tends to evoke an emotional bias against defendant' " without regard to its relevance on material issues. [Citations.]' [Citation]." (*People v. Zepeda* (2008) 167 Cal.App.4th 25, 34-35 (*Zepeda*).)

" 'Gang evidence is admissible if it is logically relevant to some material issue in the case other than character evidence, is not more prejudicial than probative, and is not cumulative. [Citations.] . . . [¶] However, gang evidence is inadmissible if introduced only to "show a defendant's criminal disposition or bad character as a means of creating an inference the defendant committed the charged offense. [Citations.]" [Citations.] . . . Even if gang evidence is relevant, it may have a highly inflammatory impact on the jury. Thus, "trial courts should carefully scrutinize such evidence before admitting it." ' " (*People v. Coneal* (2019) 41 Cal.App.5th 951, 964 (*Coneal*).)

In *Zepeda*, a jury convicted the defendant of murdering two members of a rival gang, and found true gang enhancement allegations. The trial court allowed the prosecution to play for the jury two tracks from a rap CD the defendant had written. Citing *People v. Olguin* (1994) 31 Cal.App.4th 1355, this court concluded the lyrics were "probative of defendant's state of mind and criminal intent, as well as his membership in a criminal gang and his loyalty to it. The songs showed that defendant's gang had the motive and intent to kill [rival gang members]. This evidence, although anticipatory, was explicitly relevant to the charges against defendant." (*Zepeda*, *supra*, 167 Cal.App.4th at p. 35.) This court added: "While lyrics and poems do not often establish their author's true state of mind . . . , the gang expert here testified that gangs communicate through music. Defendant's communications here were not ambiguous or equivocal. These lyrics, coupled with the other evidence of defendant's gang membership and his animosity towards [a rival gang], go beyond mere fiction to disclosing defendant's state

13

of mind, his motives and intentions, and his fealty to furthering his criminal gang's activities." (*Zepeda*, *supra*, 167 Cal.App.4th at p. 35.)

In *Coneal*, rap videos of the defendant and/or members of his gang were played for the jury in a murder trial. (*Coneal, supra*, 41 Cal.App.5th at pp. 953, 960-963) The appellate court ruled the trial court abused its discretion under Evidence Code section 352 by admitting the videos, although the error was harmless. (*Coneal*, at p. 972-973.) Admission of the videos was improper because other evidence rendered the probative value of the videos minimal (*id.* at pp. 967-968), and the videos painted a picture of defendant that posed a significant danger of undue prejudice (*id.* at pp. 970-971). But the court said song lyrics, with sufficient corroboration from other evidence, might have probative value for purposes of proving a defendant's motive. (*Id.* at p. 969.) Citing *Coneal*, defendant argues admission of the two rap videos at his trial was contrary to Evidence Code section 352 because the videos painted a picture of him eagerly seeking violence.

We conclude the trial court did not abuse its discretion in admitting the videos. As in *Zepeda*, the gang expert here testified that defendant's gang was communicating with its rival gang through the rap videos posted on YouTube, which were made to disrespect rival gangs. The videos were probative of defendant's mental state and motive. And the trial court provided a limiting instruction to the jurors, which ameliorated undue prejudice.

Under the abuse of discretion standard, we must not reverse a decision merely because reasonable people might disagree with the balance the trial court struck after conducting an Evidence Code section 352 analysis. Defendant's Evidence Code section 352 claim lacks merit. And because the statutory claim fails, so does defendant's undeveloped constitutional claim. (See *People v. Falsetta* (1999) 21 Cal.4th 903, 910, 917.)

14

IV

Moreover, defendant claims the trial court improperly denied a defense request to instruct the jury on a lesser-included offense.[2] Defendant asked the trial court to instruct on assault with a deadly weapon. (§ 245, subd. (a)(1).) The prosecutor objected, and the trial court denied the request, citing *People v. Nelson* (2011) 51 Cal.4th 198, 215 (*Nelson*) [assault with a deadly weapon is not a lesser included offense of attempted murder, but rather a lesser related offense]. Defendant says he is asserting this contention on appeal to give the California Supreme Court the opportunity to reconsider its position, and to preserve this issue for review in federal court.

" ' "The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request." [Citations.] "That obligation encompasses instructions on lesser included offenses if there is evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser." ' " (*People v. Whalen* (2013) 56 Cal.4th 1, 68.) But if, as here, the prosecutor does not consent, "a court has no obligation to instruct on lesser related offenses, which are not necessarily included in a charged crime." (*People v. Wolfe* (2018) 20 Cal.App.5th 673, 684, italics omitted.)

A lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. (*People v. Smith* (2013) 57 Cal.4th 232, 240.)

---

[2] Defendant seeks to join and adopt by reference arguments made by codefendant Gi. But to the extent defendant's contentions are made solely by joinder to Gi's opening brief, we treat them as forfeited, as they do not satisfy defendant's obligation to provide particularized argument demonstrating error and prejudice.

Defendant does not argue that facts alleged in the accusatory pleading included all the elements of assault with a deadly weapon. And the statutory elements of attempted murder do not include all the elements of assault with a deadly weapon, as attempted murder can be committed without using a deadly weapon. (See *Nelson, supra*, 51 Cal.4th at p. 215.) We must follow the California Supreme Court's holdings. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Accordingly, the claim lacks merit under *Nelson*.

V

In supplemental briefing, defendant asserts we must reverse the gang-related enhancement in light of recent statutory changes made by Assembly Bill No. 333 (2021-2022 Reg. Sess.), which became effective while this appeal was pending.

The People agree that defendant is entitled to the ameliorative effects of Assembly Bill No. 333's amendments to section 186.22. But they argue remand is unnecessary because, given the overwhelming evidence in the record, it is beyond a reasonable doubt that the jury would have found true the enhancement allegations under the Assembly Bill No. 333 amendments.

We agree with the parties that Assembly Bill No. 333's ameliorative amendments to section 186.22 apply retroactively to defendant because his judgment is not final. (See *People v. Superior Court* (Lara) (2018) 4 Cal.5th 299, 307-308 [discussing *In re Estrada* (1965) 63 Cal.2d 740]; *People v. Nasalga* (1996) 12 Cal.4th 784, 792 ["The rule in *Estrada* has been applied to statutes governing penalty enhancements, as well as to statutes governing substantive offenses"].)

And following *People v. Lopez* (2021) 73 Cal.App.5th 327 (*Lopez*), we conclude the gang enhancement allegations must be vacated and the matter remanded. (*Id.* at p. 343.)

In this case, the prosecution's gang expert testified that reputation is very important to a gang because it forces respect through fear and intimidation. The expert

also testified to specific prior convictions of gang members from defendant's gang for crimes listed in Penal Code section 186.22, subdivision (e), including unlawful firearm possession and carrying a concealed firearm.

The trial court instructed the jurors: "If you find the [d]efendants guilty of the crimes charged . . . , you must then decide whether for each crime the People have proved the additional allegation that the [d]efendant committed the crime for the benefit of, at the direction of, or in association with a criminal street gang. . . . [¶] . . . [¶] A criminal street gang is any ongoing organization, association, or group of three or more persons" "whose members . . . engage or have engaged in a pattern of criminal gang activity."

Effective January 1, 2022, Assembly Bill No. 333 altered the requirements for proving the pattern of criminal gang activity necessary to establish the existence of a criminal street gang. Among other things, the common benefit of the predicate offenses must be more than reputational. (Assem. Bill No. 333, § 3; amended § 186.22, subd. (e)(1), eff. Jan. 1, 2022.) (*Lopez, supra*, 73 Cal.App.5th at p. 345.)

Here, the trial took place before section 186.22 was amended, and the jury was not asked to, and did not, make the factual determinations now required by the amendments. (*Lopez, supra*, 73 Cal.App.5th at p. 346.) On this record, we cannot say that the jury would have found that the common benefit of the predicate offenses was more than reputational. (Cf. *Ibid.*)

The gang-related enhancement findings must be vacated and the matter remanded to give the People the opportunity to prove the applicability of the enhancements under the amendments to section 186.22. (*Lopez, supra*, 73 Cal.App.5th at p. 346; see *People v. Figueroa* (1993) 20 Cal.App.4th 65, 71-72 & fn. 2 [remand is appropriate to allow the prosecution to establish the additional element retroactively added by statutory

17

amendment; there is no violation of the double jeopardy clause or constitutional restrictions against ex post facto legislation].)[3]

## DISPOSITION

The convictions are affirmed. The gang enhancement allegation findings under section 186.22 are vacated, and the matter is remanded to the trial court to (1) give the prosecution an opportunity to retry the section 186.22 enhancements under the law as amended by Assembly Bill No. 333; and (2) resentence defendant as appropriate.


/S/
MAURO, J.

We concur:


/S/
ROBIE, Acting P. J.


/S/
HOCH, J.

---

[3] On April 14, 2022, defendant moved to join in an argument regarding section 1109 in codefendant Ackerson's second supplemental opening brief in case No. C090994. And on June 16, 2022, defendant moved to join in an argument regarding section 1109 in codefendant Gi's supplemental reply brief in case No. C090994. Assembly Bill No. 333 added section 1109, which mandates a separate trial of a section 186.22, subdivision (b) gang enhancement allegation if requested by the defense. (Stats. 2021, ch. 699, § 5 [§ 1190, subd. (a)].) Because we have determined the gang enhancement findings must be vacated, we deny defendant's motions as moot.