Filed 11/17/21  P. v. Floyd CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C089078 |
| Plaintiff and Respondent, | (Super. Ct. No. 17FE019822) |
| v. | |
| JEFFREY VAUGHN FLOYD, | |
| Defendant and Appellant. | |

A jury found defendant Jeffrey Vaughn Floyd guilty of felon in possession of a firearm, along with a gang enhancement for committing the crime for the benefit of and in association with a criminal street gang.  With a strike and recidivist enhancements, he was sentenced to an aggregate thirteen-year term.

Defendant contends insufficient evidence supported the gang enhancement.  As to that contention, we consider whether, as defendant asserts, his possession of a firearm by a rap artist during the creation of a rap video was intended to facilitate defendant's art and thus was not possessed for the benefit of and/or in association with a criminal street gang

1

with the intent to promote, further or assist in any criminal conduct by gang members.
We conclude this is not an either-or proposition — both can be true. A gang member can have multiple motives for his conduct and those motives can be both personal and gang-related. Accordingly, we conclude substantial evidence supports the gang enhancement here.

We, however, agree with defendant's other contentions concerning Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill No. 136) and Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill No. 1393). We thus strike the one-year prison term imposed under Penal Code section 667.5, subdivision (b)[1] and remand for resentencing so the court may consider whether to exercise its discretion to strike or dismiss defendant's section 667, subdivision (a) enhancement in furtherance of justice under section 1385, subdivision (a)

We otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Prosecution's Evidence

### The Charged Incident

On October 23, 2017, multiple gang suppression officers arrived at an apartment complex in Sacramento to execute a felony arrest warrant on Clarence Starnes. The complex was in an area known to be occupied and frequented by members of the Trigga Mob gang. When the officers arrived, five men, including defendant, took off running. Defendant, Starnes, Legend Lewis, Kenneth Andrews, and Coddie Williams were ultimately arrested. Three loaded handguns were recovered from the opposite side of a

---

[1] Undesignated statutory references are to the Penal Code in effect at the time of the charged offenses.

nearby fence — a .45-caliber semiautomatic and two nine-millimeter semiautomatics.[2]  A loaded nine-millimeter semiautomatic was found on Lewis.

Recovered from Williams was a GoPro video camera containing videos clips recorded that day at the apartment complex.  In one video clip, defendant is depicted holding a handgun and taking apparent direction from someone behind the camera to put the gun in his pocket and pull it out on cue.  The gun defendant held was one of the guns found on the other side of the fence.  Another clip depicts a simulated robbery and shooting.  It begins with Starnes taking a backpack off his back, opening it up and showing the contents to defendant and Andrews.  Defendant then removes a handgun from the backpack in an apparent theft.  Starnes then runs around the corner of a building, and defendant and Andrews chase Starnes simulating a shooting as Starnes falls to the ground.  Another clip shows the chase from the opposite direction and Andrews pointing a handgun as he runs.  In another clip, defendant is seen rapping with several men behind him at the corner of the building where the simulated robbery/shooting took place.  Lewis and Andrews brandish handguns in the background while defendant counts a stack of money and raps.

**The Gang Expert Testimony**

At trial, several gang experts testified, providing the following testimony.  Defendant, Starnes and Andrews are Trigga Mob gang members.[3]  The area where the arrest took place is "dominated by" Trigga Mob.  The primary activities of Trigga Mob are robbery, felon in possession of a firearm, assaults with firearms and other firearm-

---

[2]  Defendant was charged with possessing the three handguns found on the opposite side of the fence.  The prosecution argued that they were jointly possessed by defendant and other gang members.

[3]  Regarding defendant, in summary, the expert based his opinion on defendant's association with Trigga Mob gang members, posting videos that contain gang-related indicia, and defendant displaying gang-related hand signs in those videos.

related crimes. The "three main pillars" of Trigga Mob are generating revenue through legal and illegal means, power, and respect. The gang's power comes from possessing firearms and having influence in the community "so that way they can get away with their criminal activities without the threat of community members calling the police." They gain respect by their activities and the crimes they commit causing intimidation and fear in the community and other gang members.

One of the primary means of communication between rival gangs in Sacramento is through rap music videos. Rap music glorifying and bragging about gang violence is central to Sacramento gangs. Sacramento gangs post rap videos online to call out other gangs and to claim themselves as more violent. Gangs will also brag online about crimes, violence, and shootings

Trigga Mob made a number of rap videos at the apartment complex where the arrests took place. In the videos, Trigga Mob gang members disrespect rival gangs. In the three years preceding the charged incident, numerous YouTube videos and Facebook photos were posted on the Internet featuring defendant, referencing gang-related incidents and insulting rival gangs. And in one video, defendant pledges allegiance to "my organization," which the expert opined was Trigga Mob.

Trigga Mob has been involved in back and forth videos with rival gangs. A "dis" rap video would be released and the rival gang would respond with violence and then rap about what they had done and "throw a dis back towards the other side." And because of the violence, gang members armed themselves with firearms so they would not "get caught slippin."

One expert opined on the meaning of several lyrics in the video recovered on the day of the arrest. Defendant's lyric, " 'All that money we was makin', even if we have to strip a nigga naked we would do it,' " referenced an assault that occurred five days before the charged incident, where Trigga Mob members assaulted a member of a rival gang. As to the lyric " 'Gucci on the plate for the pistol like it's the fashion, south sac, back to

4

back, Trigga,' " the expert opined that "Gucci" is a reference to the two-G symbol for Gucci which is associated with the Guttah Gas gang, a Trigga Mob ally; "Trigga" referred to the Trigga Mob gang.

In response to a hypothetical based on the facts of this case, an expert opined that defendant possessed the charged firearms for the benefit of the Trigga Mob gang and in association with Trigga Mob gang members.

Regarding gang benefit, the demonstration of firearm possession in music videos benefits Trigga Mob because it shows the gang's ability to get firearms as well as its ability to commit violent crimes as a group. This increases the gang's influence in the community and its ability to continue criminal activities without community members calling the police. For example, the video that the gang suppression unit interrupted involving a simulated robbery and shooting "showcase[d] the kind of behavior that they would participate in with that firearm." It also showed the ability of the gang to commit acts of violence as a group.

Regarding gang association, the firearm possession here was in association with Trigga Mob because there were multiple validated Trigger Mob members at the video shoot. And "[t]here are multiple members who are in possession of firearms illegally, whether it be due to the firearm itself, the condition that it's in, being that they're loaded, being that they're unregistered, being that they're being concealed in public."

**Defense Evidence**

The defense maintained that defendant's firearm possession was merely a prop used to further his rap career, and he was not possessing it to promote Trigga Mob. The defense presented evidence that in the 11 months preceding the incident, defendant was living with his father and attending a music school in Riverside. Aside from the day of his arrest in the charged incident, defendant had not traveled to Sacramento since moving south.

5

**Verdict and Sentencing**

The jury found defendant guilty of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)) and found true a street gang enhancement (§186.22, subd. (b)(1)). The trial court found that defendant had suffered a prior serious felony conviction (§ 667, subds. (a)) and had served a prior prison term for unlawful possession of a firearm (§ 667.5 (b)).

The trial court sentenced defendant to an aggregate 13-year term, calculated as follows: four years for possessing a firearm (the middle term doubled for the strike), plus the three-year middle term for the gang enhancement, five years for the prior serious felony enhancement, and one year for the prior prison term enhancement.

## DISCUSSION

### I. Sufficiency of the Evidence Supporting the Gang Enhancement

Defendant challenges the sufficiency of the evidence supporting the gang enhancement. He argues insufficient evidence established that his possession of the gun benefited a criminal street gang or that he committed the act with the requisite intent to promote any criminal conduct by gang members. He argues "it is clear that [defendant's] intention in possess[ing] the firearm was to promote himself as a rap artist." He further maintains that "no specific evidentiary support" underlay the gang expert's opinion that he possessed a firearm in the videos to benefit the Trigga Mob gang, and he notes that he did not display gang signs, engage in gang graffiti, or wear clothing promoting Trigga Mob in the video recorded on the day of his arrest. Defendant argues he is a victim of guilt by association. We conclude that the evidence — which includes defendant's rap videos promoting the gang — sufficed to support the jury's gang enhancement finding.

The gang enhancement requires that the prosecution establish: (1) the crime was "committed for the benefit of, at the direction of, or in association with any criminal street gang," and (2) the crime was committed "with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1);

6

*People v. Albillar* (2010) 51 Cal.4th 47, 59 (*Albillar*); *People v. Ramirez* (2016) 244 Cal.App.4th 800, 818; *People v. Rios* (2013) 222 Cal.App.4th 542, 561.) We refer to these two prongs as the "gang-related prong" and the "specific intent prong." (*Ramirez*, at p. 818.)

As this court has previously noted, "[t]here is no requirement that the defendant be an active or current member of the gang to establish the enhancement under section 186.22, subdivision (b)(1)." (*People v. Villa-Gomez* (2017) 9 Cal.App.5th 527, 539.)[4] But gang membership is "circumstantial evidence establishing that the crime was gang-related and a motive for why a defendant may have harbored the 'specific intent to promote, further, or assist in any criminal conduct by gang members.'" (*Ibid*.)

As to the gang-related prong, " '[e]xpert opinion that particular criminal conduct benefited a gang' . . . can be sufficient to support [a] gang enhancement." (*People v. Vang* (2011) 52 Cal.4th 1038, 1048 (*Vang*).) And expert opinion that such conduct "benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[] criminal street gang' . . . ." (*Albillar, supra,* 51 Cal.4th at p. 63.)

As to the specific intent prong, courts recognize that specific intent to promote, further, or assist, "usually must be inferred from the facts and circumstances surrounding the offense" and is rarely "susceptible of direct proof." (*Rios, supra*, 222 Cal.App.4th at pp. 567-568.) And "if substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Albillar, supra,* 51 Cal.4th at p. 68.)

---

**4** Defendant asserts he is not a Trigga Mob gang member and the evidence was insufficient to establish he is. We disagree that the evidence was insufficient in this regard, but even if it was, given the other evidence, that deficiency would not alter the result.

On appeal, we review the sufficiency of the evidence supporting a gang enhancement "in the light most favorable to the judgment to determine whether it contains substantial evidence." (*Albillar, supra,* 51 Cal.4th at p. 60.) Substantial evidence includes circumstantial evidence and the reasonable inferences allowed therefrom. (*People v. Ferraez* (2003) 112 Cal.App.4th 925, 930.) "If the circumstances reasonably justify the trier of facts's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.) In other words, " '[a] reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142 (*Penunuri.*))

Here, substantial evidence supports both prongs of the gang enhancement. As to the gang related prong, the evidence supports two section 186.22, subdivision (b) theories: "for the benefit of" and "in *association* with." And only one theory need be proven to support a true finding on the enhancement. (*People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 [only one of the three gang-related prong theories need be proven — the crime was committed "(1) for the benefit of, (2) at the direction of, or (3) in *association* with a gang"].)

As for the "for the benefit of" theory, there was expert testimony that possessing firearms in music videos posted on the Internet showed Trigga Mob's ability to acquire firearms and to commit violent acts as a group. Indeed, the video defendant and the other Trigga Mob gang members were recording when interrupted by gang suppression officers "showcased[d]" behavior they would engage in with firearms. And it demonstrated their ability to commit acts of violence as a group. This increases the gang's influence in the community and fosters an environment where community members are intimidated and unwilling to call the police. That testimony, along with video evidence of defendant and other Trigga Mob members possessing and brandishing concealable firearms supports the

8

jury's finding that defendant's gun possession was committed for the benefit of a gang. (See *People v. Vang, supra,* 52 Cal.4th at p. 1044 [gang experts may testify about the culture and habits of gangs]; *Albillar, supra,* 51 Cal.4th at p. 63 [relying on expert opinion that reports of violent conduct by way of mainstream media or word of mouth benefited the gang by raising the level of fear and intimidation in the community].)[5]

The evidence also satisfies the gang related prong under a "in association with" theory. Defendant indisputably possessed a firearm in the presence of known Trigga Mob gang members. Indeed, during one of the video clips, defendant is depicted as taking physical possession of one of the guns from a backpack carried by Starnes, another Trigga Mob gang member. In this scene Andrews, also a Trigga Mob gang member, had a concealed firearm as well. Thus, substantial evidence supported a finding that defendant and fellow gang members "came together as gang members" to jointly possess the firearms used in the video. (See *Albillar, supra,* 51 Cal.4th at p. 62 [concluding that there was substantial evidence codefendant gang members "came together *as gang members*" to commit sexual assault crimes and thus "they committed these crimes in association with the gang"]; *Morales, supra,* 112 Cal.App.4th at p. 1198 ["The jury could

---

[5] Defendant points to two cases finding insufficient evidence to support a gang enhancement: *People v. Ochoa* (2009) 179 Cal.App.4th 650, 653, 662 [insufficient evidence supported first prong, where defendant acted alone in committing a carjacking and the offense did not occur in his gang's territory] and *In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1361-62 [insufficient evidence supported second prong where defendant robbed a liquor store alone after his companions, known gang members, had left]. Defendant argues a similar lack of evidence exists here. We are unpersuaded. For one, in those cases, the defendants acted alone, while here defendant jointly possessed guns with Trigga Mob members. For another, a review for substantial evidence "necessarily calls for analysis of the unique facts and inferences present in each case, and therefore comparisons between cases are of little value." (*People v. Rundle* (2008) 43 Cal.4th 76, 137-138). In other words, the substantial evidence standard of review requires that we look at the *totality of circumstances in the case before us* to determine whether there is substantial evidence, and not merely make a side-by-side comparison with other cases regarding evidence that supported or failed to support a finding of substantial evidence in those other cases.

reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members"].)

The specific intent prong — intent to promote, further, or assist gang member criminal conduct — is also supported by substantial evidence. For this prong, we first identify what criminal conduct was promoted, furthered, or assisted. Here, we need look no further than the illegal possession of firearms.[6] Defendant possessing a firearm in one video clip in the presence of other Trigga Mob gang members, and taking possession of a concealed firearm from a Trigga Mob gang member in another clip, establishes his intent to promote, further, or assist gang members in carrying concealed firearms, possessing loaded and unregistered firearms, and possessing firearms as felons. (§§ 25400, subd. (a)(2), subd. (c)(1), (c)(6); 29800, subd. (a)(1).) Then after possessing the gun, defendant rapped, referencing the gang and an ally gang, with Trigga Mob members behind him flashing their gang's signs and derogatory signs to rivals and brandishing guns. This satisfied the specific intent prong. (*See Morales, supra,* 112 Cal.App.4th at pp. 1198-1199 [defendants' "intentional acts, when combined with [their] knowledge that those acts would assist crimes by gang members, afforded sufficient evidence of the requisite specific intent"].)

Additionally, a gang expert testified about past videos in which defendant appeared with Trigga Mob gang members, spoke of Trigga Mob, and personally flashed gang hand signs. In one video, defendant pledged his allegiance to his "organization," which an expert opined was a reference to Trigga Mob. The evidence of these prior videos, which served to promote the gang, provided additional support that the charged

---

[6] As our high court has noted: "[T]he scienter requirement in section 186.22(b)(1) — i.e., 'the specific intent to promote, further, or assist in any criminal conduct by gang members' — is unambiguous and applies to *any* criminal conduct, without a further requirement that the conduct be 'apart from' the criminal conduct underlying the offense of conviction sought to be enhanced." (*Albillar*, *supra*, 51 Cal.4th at p. 66.)

10

firearm possession was committed with the specific intent to promote criminal conduct by the gang.

Defendant's argument that he possessed the gun to promote himself as a rap artist and not to promote the gang is unavailing.[7] Self-promotion as a rap artist does not preclude the jury from finding defendant also intended to promote, further, or assist Trigga Mob. Nothing in the gang enhancement statute requires a defendant's motive to be strictly gang-related. Indeed, a gang member may harbor multiple motives — personal and gang-related — when committing crimes.[8] The fact that a gang member may have personal motives in addition to a gang-related motive does not negate the requisite specific intent.

Moreover, defendant's argument ignores our standard of review. We review for substantial evidence, looking at the evidence in a light most favorable for the judgment. (*Albillar, supra,* 51 Cal.4th at p. 60.) When the circumstances reasonably justify the jury's findings, reversal "is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Ibid*.) And this case is certainly not one where "upon no hypothesis whatever is there sufficient substantial evidence to support the jury's verdict." (*Penunuri, supra,* 5 Cal.5th at p. 142.)

Finally, arguing that the rap lyrics cannot be used as evidence because they purportedly have little probative value, defendant relies on *In re George T.* (2004) 33

---

[7] As we have noted, all the guns seized by the gang suppression officers were loaded. Given the fact that they were loaded, the argument that they were just "props" for the video hardly seems credible.

[8] *Albillar, supra,* 51 Cal.4th 47, is a good example, where the defendants had dual motives. In that case, three gang members raped a teenage girl. (*Id*. at pp. 51-53.) It is apparent that they had at least two motives – personal sexual gratification and to benefit the gang.

11

Cal.4th 620 (*George T.*).[9]  In *George T.,* the minor was found to have made criminal threats based on a poem he wrote.  (*Id*. at pp. 624, 629.)  On appeal, our high court found the lyrics ambiguous and not amounting to a criminal threat.  (*Id.* at p. 636.)  Here, defendant argues that, like the poem, his rap lyrics cannot be used as evidence absent some meaningful way to determine that they are true.  We are unpersuaded.

The crime of criminal threats in *George T.* arose from a poem, while here the criminal conduct was possessing guns.  The rap lyrics were circumstantial evidence of the crime's connection to the gang and defendant's specific intent while possessing the gun.  And the videos themselves were visual evidence of defendant's gun possession and the gang engaging in one of its primary activities — illegal possession of firearms.  And as for defendant's argument related to the absence of evidence that the lyrics were true, we note that courts have relied on rap lyrics as circumstantial evidence of intent.  (See e.g. *People v. Zepeda* (2008) 167 Cal.App.4th 25, 35 [rap song recordings were probative of defendant's loyalty to a criminal gang, the gang's motive and intent to kill rivals as well as defendant's motive and intent]; *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1373 [handwritten rap lyrics properly admitted because they showed defendant's familiarity with gang culture, loyalty to the gang, motive and intent].)[10]  Moreover, a rap lyric that

---

[9]  Defendant does not challenge the admissibility of the videos on appeal, probably because no such objection was made in the trial court.  We understand his argument on appeal to be that we should not give this evidence any weight in the substantial evidence analysis.

[10] The instant case is distinguishable from *People v. Coneal* (2019) 41 Cal.App.5th 951, where similar arguments were made in connection with an evidentiary challenge, but which is conspicuously absent from defendant's briefing.  In *Coneal,* the defendant was charged with murder.  (*Id*. at p. 953.)  The prosecution played rap videos made before the murder depicting defendant's gang and a rival gang bragging about violence they had committed or intended to commit.  (*Id*. at p. 954.)  The court, for multiple reasons, concluded the videos should not have been admitted.  For one, citing *George T.*, *supra,* 33 Cal.4th at pp. 636-637, the *Coneal* court stated:  "Absent some meaningful method to

12

insults a rival gang or brags about violent crimes need not be literally true in order for the gang to reap benefits such as instilling fear in the community and rival gangs or otherwise disrespecting rival gangs.

In sum, substantial evidence supports both prongs of the gang enhancement.

## II. The One-Year Prior Prison Term Enhancement

Defendant contends the one-year prior prison term enhancement (§ 667.4, subd. (b)) must be stricken in light of Senate Bill No. 136. The People concede the issue, and we agree.

Senate Bill No. 136 became effective on January 1, 2020, and amends section 667.5(b) to authorize a one-year prior prison term enhancement only if a defendant served a prior prison term for a sexually violent offense. It applies retroactively to defendants whose judgments are not yet final. (*People v. Gastelum* (2020) 45 Cal.App.5th 757, 761, 772; *People v. Winn* (2020) 44 Cal.App.5th 859, 872-873; *People v. Lopez* (2019) 42 Cal.App.5th 337, 341.)

Here, defendant's prior prison term for a previous firearm possession, did not arise from a sexually violent offense. We will therefore modify the judgment to strike the enhancement.

---

determine which lyrics represent real versus made up events, or some persuasive basis to construe specific lyrics literally, the probative value of lyrics as evidence of their literal truth is minimal." (*Coneal,* at p. 968.) But the *Coneal* court was careful to note: "We do not mean to suggest that lyrics are never probative of their literal truth. *For example, where lyrics are written within a reasonable period of time before or after the charged crime and bear a sufficient level of similarity to the charged crime, their probative value as a statement of fact is increased*." (*Id*. at p. 969, italics added.) Thus, contrary to defendant's argument here, we conclude where the evidence establishes a connection to reasonably contemporaneous past events, rap videos discussing those events have probative value and accordingly, can be weighed into a substantial evidence analysis. Here, the lyrics regarding the assault on a rival where he was stripped naked provided evidence of recent conduct for which Trigga Mob was taking credit in disrespecting a rival gang.

### III.  The Five-Year Serious Felony Enhancement

Defendant contends remand is required because the trial court was unaware of its discretion to strike the section 667, subdivision (a) five-year prior serious felony enhancement following Senate Bill No. 1393's enactment.  In support, he points to the trial court's statement during sentencing, "*I have to* add another five consecutive for the 667(a) so-called five-year nickel prior."  (Italics added.)

The People respond that remand is unwarranted because the trial court understood its discretion and in fact denied defendant's *Romero*[11] request to strike the prior serious felony enhancement alleged as a strike conviction.  We agree with defendant.

### A.  Additional Background

Defendant was sentenced one month after Senate Bill No. 1393 took effect, affording trial courts discretion to strike prior serious felony enhancements imposed under section 667, subdivision (a).

Prior to sentencing, defendant asked the trial court to strike his prior strike conviction and his prior prison term enhancement.  As part of the request, defense counsel wrote, "adding an additional five years and doubling the base term would be unusually harsh."  Defendant did not expressly ask the court to strike or dismiss the separate section 667, subdivision (a) enhancement, either in writing or orally at sentencing.

Denying defendant's request, the trial court stated:  "having looked at all of the facts that I'm required to look at in terms of sentencing factors, the objectives of the *three strikes law* and the defendant, I conclude that at this point that you cannot make a credible case that the defendant would be deemed *outside the spirit of the three strikes* law and the scheme; and therefore, I'm going to deny the motion to strike the strike and

---

[11] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497

also to strike the — either to the strike itself or the punishment for any of these enhancements." (Italics added.)

Later, when summarizing the aggregate sentence, after stating the sentences for the firearm possession count, the gang enhancement and the prior prison term, the court stated: "And then *I have to add* another five consecutive for the 667(a) so-called five-year nickel prior, that will be consecutive. Total aggregate time, 13 years state prison." (Italics added.)

## B. Analysis

A criminal defendant is entitled to " 'sentencing decisions made in the exercise of the "informed discretion" of the sentencing court,' and a court that is unaware of its discretionary authority cannot exercise its informed discretion." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) Where the record shows the trial court proceeded with sentencing on the assumption it lacked discretion, remand is necessary to afford the trial court an opportunity to exercise its sentencing discretion at a new sentencing hearing. (*Ibid.*)

On this record, we are not sure the court was aware of its newly authorized discretion to strike the prior serious felony enhancement. The statement, "And then I have to add another five consecutive" indicates the court may have been operating under the pre-Senate Bill No. 1393 rule, wherein the section 667, subdivision (a) enhancement sentence was mandatory. (*People v. Garcia* (2018) 28 Cal.App.5th 961, 971-972). Nothing stated as part of the *Romero* request convinces us otherwise. Indeed, it appears the trial court's singular focus in ruling on the *Romero* motion was whether defendant should be "deemed outside the spirit of the three strikes law."

Accordingly, we will remand to allow the trial court to consider exercising discretion to strike or dismiss the section 667, subdivision (a) enhancement "in furtherance of justice" under section 1385, subdivision (a).

## DISPOSITION

We modify the judgment to strike the section 667.5, subdivision (b) prior prison term enhancement. We remand to allow the trial court to consider exercising its discretion to dismiss or strike the section 667, subdivision (a) prior serious felony enhancement in furtherance of justice under section 1385, subdivision (a). The trial court is directed to prepare an amended abstract of judgment and to send a certified copy to the Department of Corrections and Rehabilitation. In all other respects we affirm.


                                 _____/s/_____

                                   MURRAY, J.


I concur:


_____/s/_____

ROBIE, Acting P. J.

DUARTE, J., Concurring.

I agree with the majority's ultimate conclusion, reached in part I of its Discussion, that the true finding on the gang enhancement at issue in this case was supported by sufficient evidence. I write separately to make clear that my agreement is specific to the particular facts of this case and the current state of the applicable law. (See 1988 STEP Act, Pen. Code, § 186.20 et seq., added by Stats. 1988, ch. 1242, § 1, eff. Sept. 23, 1988; Assembly Bill No. 333 (2021-2022 Reg. Sess.) Stats. 2021, ch. 699, known as the STEP Forward Act of 2021, which amended § 186.22 and added § 1109 to the Pen. Code, eff. Jan. 1, 2022.)

On that narrow basis, I agree with the majority's conclusion that the true finding on the gang enhancement was supported by sufficient evidence, as well as the majority's ultimate conclusions that modification and remand for exercise of sentencing discretion are appropriate.


_____/s/_____
DUARTE, J.

1