Filed 1/12/23  P. v. Aguilar-Calixto CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060980 |
| v. | (Super. Ct. No. 20HF0559) |
| IRVING ABEL AGUILAR-CALIXTO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge.  Affirmed.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

Irving Abel Aguilar-Calixto appeals from a judgment after a jury convicted him of second degree murder and driving under the influence of alcohol causing great bodily injury. Aguilar-Calixto argues insufficient evidence supports his murder conviction, the prosecutor committed error, the trial court erred in instructing the jury, there was cumulative error, and the court erred by imposing fines and fees. None of his contentions have merit, and we affirm the judgment.

FACTS

Aguilar-Calixto was at a vacation rental in Anaheim with friends. He drank two shots of whiskey and four mixed drinks. He felt "pretty drunk" but about 1:00 a.m. decided to drive home to Las Vegas. After he left, his friends called him and said to return because he was too intoxicated to drive. He continued driving.

On Interstate 5, Aguilar-Calixto was weaving in and out of lanes. While driving at 108 miles per hour, he collided with a Toyota Prius (Prius).

About 1:30 a.m., tow truck driver Jose M. was en route to another call when he saw Aguilar-Calixto's disabled car and stopped behind the car. Aguilar-Calixto got out of his car and stood on the freeway. He asked Jose to drive him away from the scene. Jose refused and called 911.

The 911 dispatcher told Jose to leave the scene for his own safety, but he declined. Jose moved his truck to the right shoulder and told Aguilar-Calixto to run across the freeway when it was safe. Aguilar-Calixto's car remained on the freeway blocking traffic.

Minutes[1] later, Ivan M. swerved to avoid hitting Aguilar-Calixto's car, applied the brakes, and crashed his van into the center divider. He left his van partially blocking the HOV lane.

Twelve minutes after the initial collision, April C. collided with Aguilar-Calixto's car causing her car to overturn and rest on its roof. The sequence is unclear but Timothy W. and Corey L. collided with Aguilar-Calixto's car.

About a minute later, Giovanni M. swerved to avoid the pile-up and came to a stop on the freeway when Maria O. collided with his car. When Maria removed her seatbelt and turned around to check on her infant son who was in a car seat, Karli B. collided with her car. Maria died from blunt force trauma and her son suffered a fractured skull and vertebra.

At the time of the collision, Aguilar-Calixto's blood-alcohol content (BAC) was about 0.20 percent. When an officer interviewed Aguilar-Calixto about eight hours after the crash, Aguilar-Calixto admitted he was intoxicated when he drove and he would not have been comfortable driving his own family. Aguilar-Calixto also admitted he knew driving while intoxicated was dangerous and could cause serious injury or death. He told the officer his family members have "had accidents" and gotten "DUIs."

An amended information charged Aguilar-Calixto with murder (Pen. Code, § 187, subd. (a), all further statutory references are to the Penal Code, unless otherwise indicated) (count 1), and driving under the influence of alcohol causing bodily injury (Veh. Code, § 23153, subd. (a)) (count 2). As to count 2, it alleged he inflicted great bodily injury on the victims (§ 12022.7, subd. (a)).

---

[1] Aguilar-Calixto asserts Ivan arrived at the crash scene 10 minutes later. In his opening brief, he cites to pages 101, 102, and 106 of the reporter's transcript. These pages do not support this proposition. It is of little relevance though because Ivan did not collide with Aguilar-Calixto's car.

After instruction and closing argument, the jury convicted Aguilar-Calixto of both counts and found true the allegation. The trial court sentenced Aguilar-Calixto to 15 years to life in prison on count 1. The court imposed concurrent sentences on count 2 and the enhancements. The court imposed fines and fees as discussed below.

DISCUSSION

I. *Sufficiency of the Evidence*

Aguilar-Calixto argues there was insufficient evidence he proximately caused Maria's death. We disagree.

"Viewing the evidence in the light most favorable to the guilty verdict secured by the prosecution, we must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.]" (*People v. Cervantes* (2001) 26 Cal.4th 860, 866 (*Cervantes*).) "In homicide cases, a 'cause of the death of [the decedent] is an act or omission that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the death of [the decedent] and without which the death would not occur.' [Citation.]" (*Ibid.*) To be considered the proximate cause of the victim's death, the defendant's act must have been a substantial factor contributing to the result, rather than insignificant or merely theoretical. (*People v. Jennings* (2010) 50 Cal.4th 616, 643.) "In general, '[p]roximate cause is clearly established where the act is directly connected with the resulting injury, with no intervening force operating.' [Citation.]" (*Cervantes, supra,* 26 Cal.4th at p. 866.)

"'[A]n "independent" intervening cause will absolve a defendant of criminal liability. [Citation.] However, in order to be "independent" the intervening cause must be "unforeseeable . . . [,] an extraordinary and abnormal occurrence, which rises to the level of an exonerating, superseding cause." [Citation.] On the other hand, a "dependent" intervening cause will not relieve the defendant of criminal liability. "A defendant may be criminally liable for a result directly caused by his act even if there is

4

another contributing cause. If an intervening cause is a normal and reasonably foreseeable result of defendant's original act the intervening act is 'dependent' and not a superseding cause, and will not relieve defendant of liability. [Citation.] '[ ] The consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough. [ ] The precise consequence need not have been foreseen; it is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his act.' [Citation.]" [Citation.]' [Citations.]"[2] (*Cervantes, supra,* 26 Cal.4th at p. 871.)

"Whether the defendant's conduct was a proximate, rather than remote, cause of death is ordinarily a factual question for the jury unless '"undisputed evidence . . . reveal[s] a cause so remote that . . . no rational trier of fact could find the needed nexus."' [Citation.] A jury's finding of proximate causation will be not disturbed on appeal if there is 'evidence from which it may be reasonably inferred that [the defendant's] act was a substantial factor in producing' the death. [Citation.]" (*People v. Butler* (2010) 187 Cal.App.4th 998, 1010 (*Butler*).)

Here, there was sufficient evidence Aguilar-Calixto proximately caused Maria's death. The record includes evidence from which the jury could reasonably infer his actions set in motion the chain of events that naturally and probably resulted in each collision and Maria's death. It is indisputable Aguilar-Calixto's BAC was about 0.20 percent and he was driving over 100 miles per hour when he collided with the Prius leaving his car disabled in the middle of the freeway. About 12 minutes after Aguilar-Calixto collided with the Prius, three drivers crashed into Aguilar-Calixto's car. Seconds later, Giovanni swerved to avoid the pile-up when Maria crashed into his car. When Maria did what any able-bodied parent would do, unbuckle her seat belt to check

---

[2] The trial court instructed the jury with CALCRIM No. 240 on causation. Aguilar-Calixto does not contend the instruction was erroneous.

on her infant son, Karli collided with Maria's car, killing her. This all occurred because of Aguilar-Calixto's criminal conduct.

It is true Aguilar-Calixto's car did not directly collide with Maria's car and cause her death. But his act of driving while intoxicated at high speeds, colliding with a car, and leaving his car blocking freeway lanes was a substantial factor in the subsequent collisions. Stated differently, but for Aguilar-Calixto's actions, those six collisions would not have occurred and Maria would not have died that day. (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1396 [substantial factor test same results as but for rule].) It was fully foreseeable that a disabled vehicle in the middle of the freeway might be hit by someone.

Aguilar-Calixto asserts the following independent intervening acts absolved him of criminal liability for Maria's death: (1) there were multiple collisions over a 12-minute period involving numerous vehicles; (2) Jose made the area more dangerous by remaining at the scene against the advice of the 911 dispatcher; (3) Karli had been awake for 20 hours straight[3]; and (4) Maria took off her seatbelt. None of these were unforeseeable acts that cut off liability. To the contrary, all were normal and reasonably foreseeable consequences of an intoxicated Aguilar-Calixto colliding with the Prius at high speed and leaving his car on the freeway obstructing traffic. (*People v. Brady* (2005) 129 Cal.App.4th 1314, 1328 [defendant whose conduct proximate cause of harm not absolved of liability because another person's conduct or negligence is also substantial or contributing factor in causing harm].) The intervening causes were not too remote.

Aguilar-Calixto relies on several cases where defendants' actions were the direct cause of the victims' death. As we explain above, a defendant's liability is not limited to situations where he was the direct cause of the death but also to situations

---

[3] The evidence established it had been about 15.5 hours.

where his actions were directly connected with the death with no independent intervening act. (*Cervantes, supra,* 26 Cal.4th at p. 866.)

The jury could reasonably conclude Aguilar-Calixto's intoxicated and reckless driving was directly connected with Maria's death and the intervening acts were reasonably foreseeable. Where there is evidence from which the jury could reasonably make such a conclusion, we will not disturb it on appeal. (*Butler, supra,* 187 Cal.App.4th at pp. 1009-1010.) Thus, based on the record before us, there was substantial evidence of proximate causation.

## II. Prosecutorial Error

Aguilar-Calixto contends the prosecutor committed prejudicial error when he misstated the reasonable doubt standard, the issue is preserved, and if it is not, he received ineffective assistance of counsel. The Attorney General disputes each of these contentions. The prosecutor did not err.

A defendant may not complain on appeal of prosecutorial misconduct unless the defendant made an assignment of misconduct in a timely fashion on the same ground and requested the jury be admonished. (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1164. (*Johnsen*).) A defendant will be excused from the necessity of a timely objection if it would be futile or an admonition would not have cured the harm. (*Ibid.*)

Here, Aguilar-Calixto admits he did not object to the alleged error or request an admonishment. Contrary to his claim, the record does not suggest an objection would have been futile or an admonishment would not have cured any harm. He forfeited review of this contention. Nevertheless, we will consider the merits because he alleged his counsel was ineffective for failing to object. (*People v. Welch* (1999) 20 Cal.4th 701, 759-760 [considering merits because raises ineffective assistance of counsel claim].)

7

It is misconduct to misstate the law during argument and to attempt to absolve the prosecution of its burden of proof. (*Johnsen, supra,* 10 Cal.5th at p. 1166.) "Under state law, '"[a] prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct . . . ."'" [Citation.] Prosecutorial misconduct violates the federal Constitution when it results in a fundamentally unfair trial. [Citation.]" (*People v. Steskal* (2021) 11 Cal.5th 332, 350.)

"To determine whether a prosecutor has committed reversible misconduct in this context, we examine (1) whether it was reasonably likely that the prosecutor's statements misled the jury on reasonable doubt and (2) whether there is 'a reasonable probability that the prosecutor's argument caused one or more jurors to convict defendant based on a lesser standard than proof beyond a reasonable doubt.' [Citation.]" (*Johnsen, supra,* 10 Cal.5th at pp. 1165-1166.)

Section 1096 states in relevant part as follows: "Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an *abiding conviction* of the truth of the charge.'" (Italics added.)

In *People v. Light* (1996) 44 Cal.App.4th 879, 885, the court opined "'abiding conviction'" adequately conveys "the requirement that the jurors' belief in the truth of the charge must be both long lasting and deeply felt." In *People v. Zepeda* (2008) 167 Cal.App.4th 25, 30-31 (*Zepeda*), the court explained the following: "The phrase 'abiding conviction,' even without being described as 'felt,' adequately conveys the subjective state of certitude required by the standard of proof. The modifier 'abiding' informs the juror his conviction of guilt must be more than a strong and convincing belief. Use of the term 'abiding' tells the juror his conviction must be of a 'lasting, permanent nature,' and it informs him 'as to how strongly and how *deeply* his conviction

8

must be *held*.'  [Citation.]  [¶] The term 'abiding conviction' in the reasonable doubt instruction 'convey[s] the requirement that the jurors' belief in the truth of the charge must be both long lasting and deeply felt.'  [Citation.]  This is so whether the conviction is 'held,' 'felt,' or 'had.'  We cannot imagine a personal abiding conviction that is not deeply felt in the sense defendant uses those words."

The trial court properly gave CALCRIM No. 220 on reasonable doubt. Aguilar-Calixto does not contend otherwise.  What he does contend is the prosecutor lowered the burden of proof when discussing the reasonable doubt standard during closing argument by not including "deeply felt."  The prosecutor stated the following: "As I said earlier in the instructions, words have their everyday ordinary meaning.  What is something that's abiding?  It's lasting.  What is a conviction?  It's a belief.  It's a lasting belief. . . . [¶]  An abiding conviction of the truth of the charge."

Here, the prosecutor did not misstate the law by describing an "abiding conviction" as a "lasting belief."  This was consistent with relevant case law.  (*People v. Brigham* (1979) 25 Cal.3d 283, 290-291 [abiding conviction means lasting and permanent nature]; *People v. Pierce* (2009) 172 Cal.App.4th 567, 573 [abiding conviction is settled, fixed, lasting, and permanent and readily understood and does not require definition].)  The prosecutor's failure to mention "deeply felt" did not improperly lessen his burden of proof because "a lasting belief" conveyed the same meaning.  The prosecutor did not err.

Aguilar-Calixto relies on *Zepeda, supra,* 167 Cal.App.4th 25, to support his claim.  But that case concerned defendant's challenge to CALCRIM No. 220, which the court opined "border[ed] on the frivolous."  (*Id*. at p. 30.)  It did not concern a claim of prosecutorial error.  Additionally, what the court stated was "'abiding conviction' in the reasonable doubt instruction 'convey[s] the requirement that the jurors' belief in the truth of the charge must be both long lasting and *deeply felt*.'"  (*Id*. at p. 31.)  It did not hold a prosecutor's failure to mention "deeply felt" when discussing an "abiding conviction" is

9

error.  (*Id*. at p. 30.)  Because the prosecutor did not err, Aguilar-Calixto was not prejudiced.

### III.  Jury Instruction

Aguilar-Calixto asserts the trial court erred by failing to instruct the jury sua sponte on the lesser included offense of vehicular manslaughter.  We disagree.

As Aguilar-Calixto acknowledges, *People v. Sanchez* (2001) 24 Cal.4th 983, 992 (*Sanchez*), held gross vehicular manslaughter is not a lesser included offense of murder.  We are bound by *Sanchez's* holding, as was the trial court.  (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455.)  The trial court did not err by failing to instruct the jury sua sponte on vehicular manslaughter.  (*People v. Munoz* (2019) 31 Cal.App.5th 143, 154 [noting *Sanchez* concerned dual convictions but holding applied equally to lesser included offense instruction].)

Despite his acknowledgement of the holding in *Sanchez, supra,* 24 Cal.4th 983, Aguilar-Calixto asserts it must be reexamined because it did not address important equal protection issues.  He notes *voluntary* manslaughter is a lesser included offense of murder and a sua sponte instruction on the former is required when supported by substantial evidence.  (See *People v. Vargas* (2020) 9 Cal.5th 793, 827.)  He asserts a person charged with vehicular manslaughter is similarly situated to a person charged with voluntary manslaughter and differing treatment is unjustified.

In *People v. Wolfe* (2018) 20 Cal.App.5th 673, 677, 684 (*Wolfe*), another panel of this court rejected an equal protection challenge when defendant was convicted of murder when she struck and killed a pedestrian while driving under the influence of alcohol.  In that case, the court found defendant was not similarly situated, there was no fundamental right to lesser included offense instructions, and there was a rational basis for the statutory charging scheme.  (*Id*. at pp. 687-690.)  Aguilar-Calixto characterizes *Wolfe* as involving a broader challenge that is not instructive here.  Its rationale is equally persuasive here.

10

Specifically, even if we were to conclude there was disparate treatment of similarly situated individuals, there is a rational basis for the disparity. (*Wolfe, supra,* 20 Cal.App.5th at pp. 688-689 [no federal constitutional right to lesser included offense instruction and rational basis test applies].) As the *Wolfe* court aptly stated, "We hold that the Legislature's charging scheme is rationally related to a legitimate governmental purpose: to appropriately punish—and also perhaps to discourage—people from engaging in the highly dangerous conduct of driving under the influence." (*Id.* at p. 690.)

Based on binding authority from our Supreme Court, and persuasive authority from this court, the trial court did not err by failing to instruct the jury on vehicular manslaughter. If the Supreme Court wishes to reexamine *Sanchez's* holding and address what Aguilar-Calixto describes as "all or nothing" choice between murder and acquittal, this case serves as a vehicle to do that.

## IV. Cumulative Error

Aguilar-Calixto claims the cumulative effect of the prosecutor's mischaracterization of the reasonable doubt standard and the court's failure to instruct on vehicular manslaughter was prejudicial. We have concluded neither the prosecutor nor the court erred, and thus, this claim is meritless.

## V. Fines and Fees

Aguilar-Calixto argues the trial court failed to find an ability to pay before it imposed fines and fees.[4] He forfeited review of this issue and cannot demonstrate he was prejudiced.

In *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1168 (*Dueñas*), the court held that imposition of a court operations assessment and a court facilities assessment without a determination of the defendant's ability to pay was "fundamentally unfair" and violated due process under the federal and state Constitutions. The court also concluded

---

[4] The Supreme Court has granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, on this issue.

11

the execution of a restitution fine under section 1202.4 "must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Id*. at p. 1164.)

At the sentencing hearing, nearly three years after *Dueñas* was decided, the trial court imposed a $300 restitution fine (§ 1202.4, subd. (b)); a suspended $300 parole revocation fine (§ 1202.45); two $40 court operations fee (§ 1465.8, subd. (a)(1)); and two $30 court facilities assessments (Gov. Code, § 70373). Aguilar-Calixto did not object.

Generally, challenges to the imposition of fines and fees are forfeited unless objections are made at sentencing. (*People v. Aguilar* (2015) 60 Cal.4th 862, 866; *People v. Flowers* (2022) 81 Cal.App.5th 680, 687, review granted Oct. 12, 2022, S276237.) Because *Dueñas* was decided well before the sentencing hearing in this case, Aguilar-Calixto was on notice that legal grounds existed for asserting an inability to pay. His claim is forfeited.

Alternatively, Aguilar-Calixto argues that if the issue was forfeited, he received ineffective assistance of counsel. To demonstrate ineffective assistance of counsel, the defendant must establish counsel's performance was deficient, i.e., objectively unreasonable, and there was a reasonable probability that but for counsel's deficient performance the outcome of the proceeding would have been different.

Assuming counsel's performance was deficient, Aguilar-Calixto has not established he suffered prejudice as a result of it. He cites to his own self-serving statements he had no money and had been "sued left and right" to claim he was unable to pay any fines and fees. Ignoring the evidence that at the time of the incident he was driving a new Dodge Challenger and was cocktailing with friends at a vacation rental 300 miles from home, there is a reasonable probability that if he had objected, the trial court would have ruled that any wages he earns during his 15-year prison sentence may be used to pay those fines and fees. (*People v. Jones* (2019) 36 Cal.App.5th 1028, 1035

12

[ability to pay includes a defendant's ability to obtain prison wages]; *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837 [same].)  Absent any convincing evidence of his inability to pay, Aguilar-Calixto has not demonstrated a reasonable probability the result of the proceeding would have been different had counsel objected.

## DISPOSITION

The judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:

MOTOIKE, J.

DELANEY, J.